337 So.2d 951 (1976)
Lucy Ware MORGAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 48555.
Supreme Court of Florida.
July 30, 1976.
Rehearing Denied October 27, 1976.
William C. Ballard, Baynard, Lang & Ballard, St. Petersburg, and Talbot D'Alemberte, Steel, Hector & Davis, Miami, for petitioner.
Robert L. Shevin, Atty. Gen., James D. Whisenand, Deputy Atty. Gen., and Davis G. Anderson, Jr., Asst. Atty. Gen., for respondent.
C. Gary Williams, Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for Florida Society of Newspaper Editors, amicus curiae.
Eugene T. Whitworth, Gainesville, and James H. Gillis, Tallahassee, for Florida Prosecuting Attys. Ass'n, Inc., amicus curiae.
Parker D. Thomson and James D. Spaniolo, Paul & Thomson, Miami, for The Miami Herald Publishing Co., amicus curiae.
*952 Larry L. Simms, Miami, for The Reporters Committee for Freedom of the Press, amicus curiae.
Sanford L. Bohrer, Miami, for The American Civil Liberties Union Foundation, Inc., amicus curiae.
HATCHETT, Justice.
This case raises questions about the relationship between journalists and persons who give them information for publication, hoping to remain anonymous. Petitioner invokes our conflict certiorari jurisdiction, pursuant to art. V, § 3(b)(3) of the Florida Constitution (1975) and Rule 4.5(c)(6), Florida Appellate Rules, 1962 Revision. Conflict is alleged to exist between the decision below affirming petitioner's conviction, reported at 325 So.2d 40 and various other Florida appellate decisions. E.g., Tracey v. State, 130 So.2d 605 (Fla. 1961); Gibbs v. Mayo, 81 So.2d 739 (Fla. 1955); Penny v. State, 140 Fla. 155, 191 So. 190 (1939).
Petitioner is a newspaper reporter. She seeks to overturn her second contempt conviction for refusal to disclose the source of certain information published in a newspaper article. Under her byline, on November 1, 1973, the Pasco Times published a synopsis of a sealed presentment,[1] returned by a grand jury, which was investigating charges of official corruption in Dade City. The day the article was published the state attorney questioned petitioner as to the source of her information and, when she declined to answer, secured a contempt conviction and five month jail sentence, all within twelve hours of the article's publication. On appeal to the District Court of Appeal, Second District, the conviction was reversed.[2]
Even before the Second District reversed petitioner's first contempt conviction, she had been convicted a second time, for failure to answer the same questions, asked this time in the presence of the grand jury.[3] The second contempt prosecution began with an order to show cause which was met by a motion to dismiss on First Amendment grounds, and also on the ground that the show cause order did not specify the nature of the grand jury proceedings, during which petitioner was questioned. After the parties stipulated as to the nature of the grand jury proceedings, the motion to dismiss was denied and petitioner was convicted. On *953 appeal, the Second District affirmed the conviction and, on rehearing, upheld petitioner's 90 day sentence. Morgan v. State, 325 So.2d 40 (Fla.App. 2nd 1975). The District Court distinguished the present case from the initial contempt prosecution on the ground that the state attorney had conducted the second interrogation on behalf of the grand jury, rather than on his own behalf.
When last faced with the question of reportorial privilege, we decided[4] that journalists had no "privilege of confidential communication, as between themselves and their informants." Clein v. State, 52 So.2d 117, 120 (Fla. 1950) (reh.den. 1951). We adopted as our own the position "stated in Re Wayne, 4 Haw.Dist.Ct.R. 475," id:
Though there is a canon of journalistic ethics forbidding the disclosure of a newspaper's source of information,  a canon worthy of respect and undoubtedly well founded, it is subject to a qualification  it must yield when in conflict with the interests of justice,  the private interest involved must yield to the interests of the public.
Id.
Events in intervening years suggest that important public interests, as well as private interests, may be served by publication of information the press receives from confidential informants.[5] The United States Supreme Court has now sanctioned the view that the First Amendment affords "some protection for seeking out the news." Branzburg v. Hayes, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972). Because of these developments,[6] the District Court of Appeal reached the conclusion that "it is probable that the ruling in Clein is no longer the law." Morgan v. State, 325 So.2d at 43. The attorney general's office also took the position, both in its brief and at oral argument, that Branzburg v. Hayes, supra, and companion cases,[7] have superseded the Clein decision.
The reporters in the Branzburg trilogy were brought before grand juries to testify as to "traffic in illegal drugs ... assassination attempts on the President, and ... [it was assumed] violent disorders endangering persons and property," 408 U.S. at 701, 92 S.Ct. at 2666, 33 L.Ed.2d at 651, after published accounts concerning such criminal activity appeared, purportedly based on the subpoenaed reporters' personal observation. The journalists objected on the ground that requiring them to testify would "driv[e] a wedge of distrust and silence between the news media" and their confidential informants, with the result that certain information would eventually become unavailable to the public. In one case, it was argued that merely requiring a reporter to appear, in response to a subpoena, jeopardized the free flow of information in a manner incompatible with the First Amendment. Deciding the cases adversely to the journalists, the Court rejected

*954 the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof ... [because] .. . crimes of news sources are no less reprehensible and threatening to the public interest when witnessed by a reporter than when they are not.
408 U.S. at 692, 92 S.Ct. at 2662, 33 L.Ed.2d at 646.
In an opinion by Mr. Justice White, writing for four members of a five man majority, the Court limited its holding to grand juries' good faith investigations of crime.
The present case differs from Branzburg in that the grand jury before whom petitioner appeared was not investigating a crime. A grand jury is ordinarily under no obligation to announce the purpose of any investigation it undertakes, but here the prosecution stipulated in the trial court that the contempt charge was predicated on petitioner's refusal to answer questions asked in the course of an investigation of a violation of Section 905.24, Florida Statutes (1975).[8] In keeping with the stipulation, we are bound to conclude that the grand jury was not investigating a criminal matter because Section 905.24, Florida Statutes (1975), does not make criminal the conduct it proscribes. Morgan v. State, 309 So.2d 552 (Fla.App. 2nd 1975). It was the substance of the grand jury's presentment, moreover, that was prematurely disclosed. "The only `crime' set forth in Ch. 905, supra, relates to revealing the testimony of a witness before the grand jury, and there is no contention made here that such was the nature of the leak under investigation." Morgan v. State, 325 So.2d at 43.
Mr. Justice Powell, in casting the deciding vote against the reporters in Branzburg, "emphasize[d] ... the limited nature of the Court's holding." 408 U.S. at 709, 92 S.Ct. at 2671, 33 L.Ed.2d at 656. In an "engimatic concurring opinion," 408 U.S. at 725, 92 S.Ct. 2646 (Stewart, J., dissenting), Mr. Justice Powell wrote:
If a newsman believes that the grand jury investigation is not being conducted in good faith he is not without remedy. Indeed, if the newsman ... has ... reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court... . The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. 408 U.S. at 709, 92 S.Ct. at 2671, 33 L.Ed.2d at 656.
Although the plurality opinion rejected even a qualified reportorial privilege in terms, Mr. Justice Powell agreed with the dissenting justices that a reportorial privilege should be recognized in some circumstances. See generally Saxbe v. Washington Post Co., 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514; Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Unlike Mr. Justice Powell, the four dissenting justices would have found the privilege applicable in Branzburg, notwithstanding the serious nature of the crimes under investigation there.
The Branzburg dissenting and concurring opinions recognize news gathering as an essential precondition to dissemination of news, and the plurality opinion also conceded that "without some protection for seeking out the news, freedom of the press could be eviscerated." Branzburg v. Hayes, 408 U.S. at 681, 92 S.Ct. at 2656, 33 L.Ed.2d at 639. Of course, no such privilege can amount to an absolute right to an unimpeded flow of information in all places and at all times. Application of the privilege in a given case involves "the striking of a proper balance." 408 U.S. at 709, 92 S.Ct. at 2671, 33 L.Ed.2d at 656. As was pointed out in *955 Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965), almost any governmental restriction on action could "be clothed by ingenious argument in the garb of decreased data flow. For example, the prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information... ." 381 U.S. at 17, 85 S.Ct. at 1281, 14 L.Ed.2d at 190.
In deciding whether petitioner was privileged to refuse to disclose her source in the present case, we first consider the governmental interest[9] sought to be advanced, in compelling disclosure of the confidential informant's identity. The District Court found that "preservation of the rule of secrecy in grand jury proceedings and [thereby] preservation of the integrity of the grand jury as an arm of the judicial branch of government [are] of compelling public interest," outweighing any First Amendment considerations. We cannot accept the view that a generalized interest in secrecy of governmental operations should take precedence over the interest in assuring public access to information that comes to the press from confidential informants. Cf. Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731, 739 (1969) (An "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression") Various governmental operations may be hampered by publicity, but the desirability of secrecy varies greatly, depending on the particular governmental function, and its sensitivity to publicity. A nonspecific interest, even in keeping the inner workings of the Pentagon secret, has been held insufficient to override certain First Amendment values. See New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). The "preservation of the rule of secrecy" in which some governmental activity has traditionally been enshrouded, is not the specific, substantial governmental interest necessary to defeat a reportorial source privilege.
Secrecy in the work of the grand jury is more than a tradition, however. Grand jury secrecy serves several specific governmental purposes. When a grand jury investigation culminates in indictment, the indictment is customarily sealed until the arrest of the accused can be effected. See Section 905.26, Florida Statutes (1975). Secrecy serves in this context to prevent the flight of accused persons. Witnesses appearing before the grand jury must be free to tell what they know, without fear of having to answer elsewhere for their testimony. See Section 905.27(2), Florida Statutes (1975) ("unlawful for any person knowingly to publish ... testimony of a witness examined before the grand jury ..."). Likewise grand jurors must be free in their deliberations to express their opinions without fear of retribution. See Sections 905.24-.25, Florida Statutes (1975). In the present case, however, no indictment was returned. The grand jurors' deliberations, like their voting, remain secret to this day, as far as the record shows. There is no indication that any grand jury witness' testimony has ever been disclosed.
One interest recognized by statute may have been defeated, in the present case, but this interest was a private interest in reputation. Section 905.28, Florida Statutes (1975), forbids disclosure of presentments critical of unindicted persons "until the individual concerned has been furnished a copy ... and given 15 days to file ... a motion to repress." See State ex rel. Brautigam v. Interim Report of Grand Jury, 93 So.2d 99 (Fla. 1957). Here criticism of Norris R. Nixon, Dade City's Chief of Police, was published before he had an opportunity to apply to a court for repression of the criticism. The loss to Mr. Nixon of this opportunity was the only specific interest[10] compromised by premature *956 disclosure of the grand jury's presentment in this case.[11] There was never any showing that Mr. Nixon could have prevailed on a motion to repress, so it is only a matter of speculation whether he suffered any harm at all. On this record, the balance must be struck in favor of the public interest in unencumbered access to information from anonymous sources. Cf. Harris v. Blackstone Developers, 41 Fla. Supp. 176 (4th Cir.1974) (Gooding, J.)
If the mere possibility of injury to private reputation justified a court in requiring that a reporter divulge sources,[12] in what circumstances would a reporter not have to give up the names of confidential informants? The authorities would presumably never have learned of the breach of confidentiality as regards the grand jury's presentment, if they had not read the presentment's contents summarized in the newspaper. The First Amendment is clearly implicated when government moves against a member of the press because of what she has caused to be published. These contempt proceedings were not brought to punish violation of a criminal statute and were not part of an effort to obtain information needed in a criminal investigation.[13] Their purpose was to force a newspaper reporter to disclose the source of published information, so that the authorities could silence the source. The present case falls squarely within this language in the Branzburg plurality opinion: "Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification." 408 U.S. at 707-8, 92 S.Ct. at 2670, 33 L.Ed.2d at 655.
The decision of the District Court of Appeal, Second District, is quashed, petitioner's conviction is reversed, and this case is remanded for proceedings consistent with this opinion.
ADKINS and BOYD, JJ., concur.
SUNDBERG, J., concurs with an opinion.
ENGLAND, J., concurs in result only.
OVERTON, C.J., dissents with an opinion.
SUNDBERG, Justice (concurring).
I concur generally with the views expressed by Mr. Justice Hatchett in the majority opinion. I construe his opinion basically to embrace the limited or conditional *957 First Amendment privilege to confidentiality of news sources which was recognized by a majority of the Court[1] in Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Quoting United States v. Liddy, 155 U.S.App.D.C. 382, 478 F.2d 586 (1972), and Bursey v. United States, 466 F.2d 1059 (9th Cir.1972), the District Court of Appeal, Second District, explicated this privilege as follows:
"... As we read Branzburg, as have other courts construing it, there is to some degree a recognizable limited or conditional First Amendment privilege to confidentiality of news sources which, nonetheless, must yield when outweighed by a more compelling public interest. Branzburg, as here, was concerned with a grand jury setting, and it was determined there that a valid inquiry into criminal activity was of sufficient compelling nature as to override whatever conditional privilege was vested in the press. Additionally, it has been suggested that Branzburg may also require that a determination be made that society's interest is `immediate, substantial, and subordinating'; that there be a `substantial connection' between the information desired of the witness and the interest of society in the subject matter of the investigation; `and that the means of obtaining the information is not more drastic than necessary to forward the asserted governmental interest.' ..." (Footnotes omitted; emphasis supplied)

Morgan v. State, 325 So.2d 40, 43, (Fla.2d DCA 1975).
In fact, the parties in their briefs tend to be in accord that the test with respect to confidentiality of sources is as delineated in Morgan's interpretation of Branzburg, supra, although counsel for petitioner in oral argument were reluctant to concede any limitation on her asserted First Amendment right to protect confidentiality of sources. The balancing test enunciated by the court below, however, makes eminent good sense to me.
The problem, of course, lies in applying the standard to the facts and procedure of this case. Frankly, the problem does not pose much difficulty when the procedural posture of the case before the trial court and the District Court of Appeal is analyzed in conjunction with the applicable provisions of Chapter 905, Florida Statutes (1975), respecting grand juries. Essentially, I see it as a matter of Ms. Morgan's having been found guilty of an offense which is not supported by the evidence in the record. The probata simply did not meet the allegata. Relevant portions of the newspaper report asserted by the state to support the grand jury inquiry under Section 905.24, Florida Statutes (1975), are set forth in footnote 1 to the majority opinion. By stipulation the issues were confined to those concerning Section 905.24, Florida Statutes (1975). Petitioner explicitly pleaded "not guilty to the charge of contempt of a proceeding of the grand jury investigating a violation of Section 905.24, Florida Statutes." See footnote 8 to the majority opinion. Counsel for petitioner took great pains in both written and oral motions to clarify precisely the charge against his client.
Section 905.24, Florida Statutes (1975), provides:
"Grand jury proceedings are secret, and a grand juror shall not disclose the nature of or substance of the deliberations or vote of the grand jury." (Emphasis supplied)
*958 On the other hand, Section 905.28(1), Florida Statutes (1975), provides in pertinent part:
"No report or presentment of the grand jury relating to an individual which is not accompanied by a true bill or indictment shall be made public or be published until the individual concerned has been furnished a copy thereof and given 15 days to file with the circuit court a motion to repress or expunge the report or that portion which is improper and unlawful." (Emphasis supplied)
It is apparent that the allegedly offending matters contained in the newspaper report relate only to the report or presentment of the grand jury and not to their deliberations or vote. It is clear from the statutory scheme of Sections 905.24 through 905.28, Florida Statutes (1975), that the several functions of the grand jury system are dealt with separately and explicitly, and varying prohibitions are imposed with respect to each, i.e., deliberations or vote of grand jurors (Section 905.24); testimony in court by a grand juror as to the vote of jurors or opinions expressed by them (Section 905.25); disclosure of the finding of an indictment by anyone privy to the grand jury proceedings prior to the arrest of the person indicted (Section 905.26); disclosure of testimony of any witness examined before the grand jury or other evidence received by it (Section 905.27); and publication of the report or presentment (Section 905.28). Consequently, it clearly is not proper to find one guilty of contempt for failure to respond to questions concerning the report or presentment when the basis of the grand jury inquiry, as charged, was disclosure of the nature or substance of the deliberations or vote of the grand jury. See Aaron v. State, 284 So.2d 673, 677 (Fla. 1973).
The foregoing may appear an overly technical view of the matter, but it is submitted that in so sensitive an area as balancing First Amendment rights against an assertedly more compelling public interest, the issue must be precisely framed so that the newsperson may make an initial assessment of his or her position with respect to disclosure. In this case, Ms. Morgan's counsel insisted on precision so as to admeasure the risk involved to his client in refusing to disclose her sources. He very well could have concluded that, based on the finelyhoned issue as ultimately framed by stipulation, the test of compulsion could not be met, and therefore the proper course for his client was to insist upon primacy of the First Amendment guarantee.
Subject to the foregoing observations, I concur with the majority opinion.
OVERTON, Chief Justice (dissenting).
I dissent. I am deeply concerned that the decision by the majority will allow individual grand jurors, prosecutors, court reporters, or other grand jury staff to divulge to the press with immunity the contents of secret grand jury proceedings. Leaks in effect will be condoned, and the oath of secrecy will be unenforceable. In my opinion the facts and circumstances establish a criminal proceeding within the Branzburg rule. The grand jury and its staff are expressly sworn to secrecy by the trial court or the grand jury itself.[1] The intentional *959 violation of that oath is, my opinion, a crime.
The offense strikes at the very integrity of the grand jury.
It is unrefuted that these facts establish there was a breach of the oath of secrecy. A trial judge cannot just ignore that violation. The grand jury may be considering other unrelated causes. The fact that there is a breach of secrecy affects the very existence of that specific grand jury. I generally agree with the opinion of Mr. Justice Powell in the Branzburg decision, but those views are not applicable to the circumstances of this cause.
The secrecy of the grand jury has as its purpose the protection of jurors from retribution, assuring the grand jury's independence from outside influence, and the protection of the innocent from unjustified charges. If we are going to compromise the secrecy of its deliberations, it would be better to open them up entirely.
NOTES
[1] The newspaper report was based on information from several sources, but this passage was identified by petitioner as being based on confidential information:

[The grand jury] reportedly criticizes [officials]...
But the jurors did level strong criticism at Nixon and other Dade City officials, The Times was told.
The jurors reportedly also decided to keep a close eye on the Pasco County building department during the next 90 days, and will meet again in the future to review the department's progress.
The unusual sealed presentment reportedly was sealed at Williams' request because it identified individuals who were criticized, but not indicted.
Grand jurors reportedly were promised that its contents will be released within a week.
(R. 100).
[2] Mrs. Morgan argued that the state attorney had no authority to ask the questions she had not answered, and that she was therefore within her rights in refusing. The state attorney took the position that the questions were proper, because asked in the course of a criminal investigation, namely, into apparent violations of Section 905.24, Florida Statutes (1975). This section provides as follows:

Grand jury proceedings are secret, and a grand juror shall not disclose the nature or substance of the deliberations or vote of the grand jury.
The District Court reasoned that Section 905.24, Florida Statutes (1975) failed to define a crime, under the established Florida rule that a criminal statute, which does not specify a penalty, must either denominate as unlawful the conduct it proscribes, or designate the misconduct a misdemeanor, in order to be effective. Taulty v. Hobby, 71 So.2d 489 (Fla. 1954). Citing Barnes v. State, 58 So.2d 157 (Fla. 1951) (reh. den. 1952) the District Court concluded that "the subject matter of [a state attorney's] interrogation [conducted pursuant to Section 27.04, Florida Statutes (1975)] must be confined to violations of criminal law", at 553, and reversed Mrs. Morgan's conviction. Morgan v. State, 309 So.2d 552 (Fla.App. 2nd DCA 1975).
[3] Compulsory self-incrimination is not an issue in this case. Petitioner would have been immunized from prosecution for any transaction as to which she might have testified.
[4] The Clein case is distinguishable from the present case, because the newspaper in Clein reported grand jury witnesses' testimony, while here the newspaper published a summary of a presentment.
[5] See concurring opinion of Mr. Justice Brennan in Hynes v. Mayor and Council of Borough of Oradell, ___ U.S. ___, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); Talley v. California, 362 U.S. 60, 65, 80 S.Ct. 536, 539, 4 L.Ed.2d 559, 563 (1960) ("Even the Federalist Papers . . were published under fictitious names. It is plain that anonymity has sometimes been assumed for the most constructive purposes.")
[6] In general "a District Court of Appeal does not have authority to overrule a decision of the Supreme Court of Florida." Hoffman v. Jones, 280 So.2d 431, 440 (Fla. 1973). Within their sphere, however, District Courts of Appeal are courts of last resort. See Johns v. Wainwright, 253 So.2d 873 (Fla. 1971); Lake v. Lake, 103 So.2d 639 (Fla. 1958). As such, they draw for precedent on their own prior decisions and on decisions this Court handed down before they were in existence. The present case is distinguishable from Hoffman v. Jones, supra, because there a District Court of Appeal "overruled" decisions this Court had handed down after the District Courts of Appeal were created. Here the District Court's tentative rejection of Clein was obiter dicta, and the decision in Clein antedates creation of the District Courts of Appeal.
[7] In re Pappas and United States v. Caldwell, were considered with Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).
[8] This statute is set out in full ante p. 952 n. 2. The prosecutor stated on the record, "If we wish to confine the issues to those concerning 905.24, the State is prepared to do so at this time and will proceed within that frame of reference." (R. 48-49) Petitioner pleaded "not guilty to the charge of contempt of a proceeding of the Grand Jury investigating a violation of Section 905.24, Florida Statutes." (R. 49)
[9] The judiciary, a branch of government co-equal with the executive and the legislature, is no less subject to constitutional strictures against governmental interference with First Amendment rights. New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).
[10] The District Court observed:

Branzburg may also require that a determination be made that society's interest is "immediate, substantial, and subordinating"; that there be a "substantial connection" between the information desired of the witness and the interest of society in the subject matter of the investigation; "and that the means of obtaining the information is not more drastic than necessary to forward the asserted governmental interest." If this be so, and we take it to be so, ... 325 So.2d at 43.
Although we would be unable to conclude on this record "that society's interest is `immediate, substantial, and subordinating'" or that less drastic means were unavailable to the authorities, we do not reach these questions because no significant "interest of society" in requiring petitioner to disclose her sources(s) was demonstrated in these proceedings.
[11] Although the presentment was to "be released within a week," the grand jury "decided to keep a close eye on the Pasco County building department during the next 90 days," according to the newspaper account. Such surveillance might be thought to depend on secrecy for its effectiveness, but the same source gives as the only reason for sealing the presentment the fact that it "identified individuals who were criticized but not indicted," and petitioner testified under oath that the prosecutor himself "confirmed in ... conversations that [the presentment] would be released in a very short time." According to petitioner, the prosecutor also disclosed personally that the grand jury "looked into business transactions by Dade City Mayor Ed Starling and several city commissioners... . The investigation ... centered around a land purchase... . Starling was one of six East Pasco residents who bought a 13 1/2-acre tract south of Dade City for a motel, and then approached the city for sewer and water services." These disclosures by the prosecutor to the press would surely have alerted anybody concerned, who was not already aware of the investigation.
[12] We express no view on appropriate sanctions, if any, in an action for libel against a newspaper, where the newspaper declines to reveal its sources for the allegedly libelous material.
[13] See ante p. 952, n. 2.
[1] My interpretation of the Branzburg trilogy is this: While the plurality opinion expressing the views of four members of the Court explicitly rejects any newsman's privilege short of the case in which there is "[o]fficial harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources," the other five members of the Court recognize a privilege of at least the dimension outlined by Mr. Justice Powell in his concurring opinion:

"... The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions."
[1] The following is the oath generally given to grand jurors:

"You, as Grand Jurors for the body of this county of ____ do solemnly swear (or affirm, as the case may be) that you will diligently inquire, and true presentment make, of all such matters and things as shall be given you in charge; the counsel of the State of Florida, your fellows and your own, you shall keep secret, unless required to disclose the same by some competent court.
"I charge you now that you shall not, under any circumstances, discuss these matters unless you are released by some competent court. Your vote shall never be made known  the opinion expressed by any of you on any matter shall never be made known  and the testimony given before you shall not be made known, unless you are released by some competent court. This is binding upon you for all times.
"You shall present no man for envy, hatred, or malice, neither shall you leave any man unpresented for love, fear, favor, affection, reward, or the hope thereof, but you shall present things truly as they come to your knowledge, according to the best of your understanding. So help you God."
A similar but shorter oath of secrecy is given to the grand jury staff.