### STATE v. PETRANTONI.

Criminal No. 78-03597.

Circuit Court, Pinellas County, Criminal Division.

September 18, 1978.

Lee Fugate, Assistant State Attorney, for the state.

Stephen Segall, Tampa, for the defendant.

George K. Rahdert of Shackleford, Farrior, Stallings & Evans, Tampa, for the *St. Petersburg Times* and Susan Denley.

James L. Yacavone, III of Fowler, White, Gillen, Boggs, Villareal & Banker, Clearwater, for the *Clearwater Sun* and Lynn Perri.

JAMES B. SANDERLIN, Circuit Judge.

*Order quashing subpoenas and protective order:* This cause came on to be heard upon like motions to quash subpoena for deposition and subpoena for trial and motions for protective order filed by Susan Denley, a reporter for the *St. Petersburg Times,* and Lynn Perri, a reporter for the *Clearwater Sun,* directed against subpoenas served upon the movants by the defendant in this case. The movants asserted a First Amendment privilege in open court, and defendant presented further arguments against invocation of this privilege during *in camera* proceedings. The court having considered argument of counsel, authorities presented to the court, and the record in this case, and being otherwise duly advised, makes the following findings of fact and conclusions of law.

1. It is uncontested that Susan Denley and Lynn Perri are news reporters and that the testimony sought from them pertains to their newsgathering activities undertaken as professional journalists.

2. The defendant does not seek testimony about the petitioners' confidential new sources, but concedes that testimony is sought concerning both information contained in news stories written by the movants, and information received by the petitioners during the newsgathering process which was not reported in published articles. Basically, the defendant seeks testimony about telephone conversations between the defendant and the movants. The defendant asserts that these telephone conversations will reflect on the defendant's criminal intent, or lack thereof.

3. This court concurs in the view that "it is fundamental that newsgathering qualifies for First Amendment protection, for a ban upon newsgathering could effectively destroy freedom of the press." *In re Adoption of Propsed Local Rule 17,* 339 So.2d 181, 183 (Fla. 1976) ; see also *Branzburg v. Hayes,* 408 U. S. 665, 681 (1972).

4. Compulsory process will necessarily have a chilling effect on First Amendment freedoms. See, e.g., *Gibson v. Florida Legislative Investigation Committee,* 372 U. S. 539, 544 (1963). As stated by the Supreme Court of the United States —

> "It is particularly important that the exercise of the power of compulsory process be carefully circumscribed when the investigative process tends to impinge upon such highly sensitive areas as freedom of speech or press, freedom of political association, and freedom of communication of ideas ..."

*Sweezy v. New Hampshire,* 354 U. S. 234, 245 (1957).

5. For the purpose of protecting against the chilling effect of compulsory discovery, it is the recognized law in this state and throughout the nation that the press enjoys a broad First Amendment privilege against compelled testimony and production of documents. *Branzburg v. Hayes,* 408 U. S. 665, 707 (1972); *Morgan v. State,* 337 So.2d 951, 955-956 (1976); *Morgan v. State,* 325 So.2d 40, 43 (Fla. 2nd DCA 1976), rev'd on other grounds, 337 So.2d 951 (Fla. 1976); *Laughlin v. State,* 323 So.2d 691 (Fla. 3d DCA 1976); *Bursey v. United States,* 466 F. 2d 1059, 1083 (9th Cir. 1972); *State v. St. Peter,* 315 A.2d 254, 256 (Vt. 1974).

6. The purpose of this constitutional privilege is not simply to protect confidential news sources, but rather it extends protection to the newsgathering process, the exercise of editorial judgment, and more fundamentally, the privilege is designed to promote the free flow of information in which the public is the ultimate beneficiary. A number of authorities have upheld the reporter's privilege in cases where confidential news sources were not implicated, basing the privilege upon the principles here stated. See, e.g., *Bursey v. United States,* supra; *United States v. Steelhammer,* 539 F.2d 373 (4th Cir. 1976); *State v. Miller,* 45 Fla. Supp. 137 (Broward Cir. Ct. 1976); *Hendrix v. Liberty Mutual Ins. Co.,* 43 Fla. Supp. 137 (Broward Cir Ct. 1975); *State v. Stoney,* 42 Fla. Supp. 194 (Dade Cir. Ct. 1974); *Schwartz v. Almart Stores,* 42 Fla. Supp. 165 (Dade Cir. Ct. 1975); *Harris v. Blackstone Developers,* 41 Fla. Supp. 1976 (Duval Cir. Ct. 1974). (As stated by one court in evaluating the distinction between subpoenas directed to confidential sources and those directed to information obtained in the course of routine newsgathering —

> "This distinction is utterly irrelevant to the 'chilling effect' that the enforcement of these subpoenas would have on the flow of information to the press and to the public. The compelled production of a reporter's resource materials is equally as invidious as the compelled disclosure of his confidential informants."

*Loadholtz v. Fields,* 389 F. Supp. 1299, 1303 (M.D. Fla. 1975).

7. Once a news reporter asserts his or her First Amendment privilege, the burden shifts to the party seeking compelled testimoney to demonstrate and prove a compelling interest in compulsory testimony which is sufficient to subordinate the First Amendment. *Morgan v. State,* supra, 337 So.2d at 956 n.10; *Florida v. Hurston,* 3 Med. L. Rptr. 2295, 2296 (Lake Cir. Ct. 1978); *Schwartz v. Almart Stores,* supra; *Harris v. Blackstone Developers,* supra; *State v. Stoney,* supra; *Hendrix v. Liberty Mutual Ins. Co.,*

supra. It is established upon these authorities that to meet this burden of proof, the proponent of testimony must demonstrate that —

(a) The reporter has information relevant and material to the offense charged or to the defense of the person charged.

(b) The reporter has relevant and material information which is not available from sources not protected by the First, Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 4 and 12 of the Florida Constitution.

(c) The party seeking information has unsuccessfully attempted to obtain the evidence sought from other sources less chilling of First Amendment freedoms and exhausted all efforts in this regard.

(d) The evidence sought is so important that non-production thereof would result in a violation of the defendant's constitutional rights.

8. The defendant has not made a sufficient showing to overcome the First Amendment privilege. Upon an *in camera* hearing the defendant argued, *inter alia,* that since the news reporters were the only parties to certain telephone conversations with reporters Denley and Perri, there were no alternative sources for this information. To so hold would eviscerate the First Amendment privilege, because virtually every conversation or communication between a reporter and a news source would be subject to compelled disclosure on this theory. Rather, the proper inquiry is whether the information received by the reporter in such telephone conversation is relevant, material and is unavailable to the defendant from other sources. Here the defendant herself is one such alternative source, and she is entitled to choose to testify as to these telephone conversations. Moreover, for reasons more fully expressed by the court in the transcript of the *in camera* proceedings, alternative sources of the same information appear to exist. Finally, the court holds that the information sought is itself not relevant, and does not go to the heart of the issues presented by the case, again for reasons more fully expressed in the transcript of the *in camera* proceedings.

Accordingly, it is ordered and adjudged that all subpoenas directed to reporters Susan Denley and Lynn Perri are hereby quashed, and the court grants the motions for protective order, prohibiting further subpoenas of the movants in this case.