# MILLER, et al. v RICHARDSON, etc., et al.

## Case No. 85-43134 (CA 20)

Eleventh Judicial Circuit, Dade County

July 16, 1986

## APPEARANCES OF COUNSEL

**Charles Paseck** for plaintiff.

**Leonard Moriber** for defendant.

**Maria Isabel Hoelle** for defendant.

**Florence Beth Snyder, Milledge, Iden & Snyder,** for WSVN-Channel 7 and Marianne Murciano.

## OPINION OF THE COURT

MARIO P. GODERICH, Circuit Judge.

THIS CAUSE came on for hearing upon Marianne Murciano's motion to quash subpoena duces tecum for deposition.

Murciano is employed as a reporter by WSVN-Channel 7, a television station which serves South Florida including Dade County. Neither WSVN nor any of its employees are parties to the instant case.

Murciano was subpoenaed for deposition by Defendant and contends that the federal and state constitutions prohibit such a subpoena on the facts of this case. Murciano timely moved to quash the subpoena.

The Court has considered the record in this case, Murciano's memorandum of law, argument of counsel, and has conducted its own research. For the reasons set forth below, Murciano's motion is GRANTED.

The Plaintiffs are the parents of a young son, now deceased, who was buried in the Defendants' cemetery. Plaintiffs seek damages allegedly caused by Defendants' "willful disturbance" of the child's "repose."

In the course of newsgathering about the dispute between the parties, Murciano visited the Defendants' cemetery, interviewed participants in the dispute, and prepared a report which was broadcast on a Channel 7 newscast.

The defense wishes to depose Murciano "to find out whose version she supports," and further asserts that there is no testimonial privilege applicable to the facts at bar.

Neither party claims that Murciano was present when the decedent's "repose" was alleged to have been "disturbed." Thus, she does not possess any personal knowledge whatsoever concerning the Defendant's guilt or innocence.

Subpoenas directed to members of the media have been the subject of frequent litigation in Dade County, in Florida, and throughout the nation, with courts consistently recognizing that such subpoenas raise serious First Amendment questions which must be carefully weighed and scrutinized by the Court. *Johnson v. Bentley*, 457 So.2d 507 (Fla. 2d DCA 1984); *Gadsden County Times v. Horne*, 426 So.2d 1234 (Fla. 1st DCA) *pet. rev. denied*, 441 So.2d 631 (1983); *Tribune Co. v. Green*, 440 So.2d 484 (Fla. 2d DCA 1983); *Times Publishing Co. v. Burke*, 375 So.2d 297 (Fla. 2d DCA 1979). The courts have very rarely enforced such subpoenas,[1] but they have held that in a very narrow class of cases, a journalist's testimony may properly be required.

Contrary to Defendant's assertion, the burden of proof is always upon the party seeking to compel a journalist's testimony to show that the information sought is not protected by the First Amendment testimonial privilege.

---

[1] Defendant did not cite any Florida civil case in which a subpoena to a non-party journalist has been enforced. See Woods v. Lutheran Inner City Center, 10 Fla. Supp. 2d 32 (4th Judicial Circuit 1985); 11 Med. L. Rptr. 1776, 1776 (Fla. 4th Cir. 1985).

Murciano submits that the purpose for which Defendants seek her testimony is insufficient to overcome the privilege which has been developed by Florida courts.

It is well-settled that the testimonial privilege for non-party journalists "is applicable to criminal as well as civil cases and to confidential and nonconfidential sources of information." *Tribune Co. v. Green, supra.* 440 So. 2d at 486. Although the rationale for the privilege has been most fully developed in so-called confidential source cases.[2]

The purpose of this constitutional privilege is not simply to protect confidential news sources, but rather extends protection to the newsgathering process, the exercise of editorial judgment, and more fundamentally, the privileges designed to promote the free flow of information in which the public is the ultimate beneficiary.

> *Florida v. Petrantoni,*
> 48 Fla. Supp. 49
> (Fla. Cir. Ct. 1978)

Compulsory process by its very nature has a chilling effect on the newsgathering process and the exercise of editorial discretion, and, therefore, upon the freedom of the press. *Times Publishing Co. v. Burke, supra,* 375 So. 2d 297.

Censoring the press in the traditional sense of prior restraint is only one means of impinging upon First Amendment values. Equally unacceptable is the chilling effect of unjustified compulsory process.

> *Johnson v. Miami,* 6 Med.
> L. Rptr. 2110 (S. D. Fla.
> Case No. 79-3725, 1980)
> (Hoeveler, J.)

In his opinion, Judge Hoeveler quoted with approval from an article by Prof. Vincent Blasi on the *Checking Value in First Amendment Theory,* American Bar Foundation Research Journal 521, 604 (1977) which stated:

When a reporter appears on the witness stand . . . he runs the risk of being perceived as a partisan for whichever side benefits from his testimony. In addition, even if the subpoena threat does not lead to conscious decisions by editors and reporters to kill stories or refrain

---

[2] See Tribune Co. v. Huffsteddler, 11 Fla. L. W. 246 (June 6, 1986); Morgan v. State, 337 So. 2d 951 (Fla. 1976) (reporter's contempt conviction for refusal to testify before a grand jury reversed), Miller v. Transamerican Press, 621 F.2d 721, modified on rehearing 628 F.2d 932 (Fifth Cir. 1980) (recognizing a qualified privilege for confidential sources in a libel suit).

from pursuing certain leads, constant worry about being subpoenaed can distract journalists, making it extremely difficult for them to pursue their craft in a vigorous, innovative, truly autonomous fashion. . .

The Court agrees with this analysis and notes that to enforce subpoenas against journalists on facts such as these could well create a situation where people will simply refuse to deal with reporters, thus stifling the free flow of information so vital to a democracy. Therefore it is not enough for a party to assert that a reporter's testimony might be helpful to his case, or that reporters make good witnesses, or that the reporter is the most convenient source of information.

It is manifestly insufficient to subpoena a non-party journalist "to find out whose version she supports."

In sum, Florida journalists enjoy a qualified testimonial privilege. This privilege cannot be displaced unless the party seeking testimony demonstrates that the journalist possesses information which is essential to the fair administration of justice and which cannot be obtained from alternative sources which do not implicate the First Amendment right to gather news. The Defendant cannot make such a showing; accordingly the motion to quash must be granted.

DONE and ORDERED in Chambers at Miami, Dade County, Florida, this 16th day of July, 1986.