523 So.2d 1171 (1988)
Cynthia MAYER, Appellant,
v.
STATE of Florida, Appellee.
No. 87-1155.
District Court of Appeal of Florida, Second District.
March 4, 1988.
Rehearing Denied April 27, 1988.
*1172 George K. Rahdert of Rahdert, Acosta & Dickson, P.A., St. Petersburg, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Judge.
Appellant, Cynthia Mayer, a reporter for the St. Petersburg Times (Times), appeals the final judgment adjudicating her guilty of indirect criminal contempt of court and the resulting impositions of a $300 fine and a suspended sentence of ten days in the county jail. We affirm.
Appellant's action, which the trial court found constituted contempt of court, was the publication by the Times of an article written by appellant containing information that she had obtained at a child custody hearing conducted pursuant to section 39.408, Florida Statutes (1985). Appellant appeared in the trial court at the time scheduled for the custody hearing. Counsel for the couple seeking custody of the child, the guardian ad litem for the child and the Department of Health and Rehabilitative Services (HRS), objected to appellant's presence and requested the trial judge to conduct a closed hearing to insure that the proceedings be kept confidential. Counsel for the child's grandmother, in whose custody HRS had previously placed the child, did not object to appellant's presence. Counsel for the child's natural mother urged that appellant be allowed to attend the hearing.
The parties urging closure were unprepared to cite authority in support of their position to the trial judge. The trial judge was concerned that there was authority mandating a closed hearing. However, being unsure of that authority and noting the editorial policy of the Times not to print names of juveniles, the trial judge agreed not to prohibit appellant from attending the *1173 hearing. Instead, appellant's presence at the hearing was expressly conditioned on her agreement not to publish information obtained by reason of her presence in the event the trial judge determined that there was authority mandating that the hearing be closed and confidential. The trial judge informed appellant and the parties that she would review the authorities later that day and inform appellant of her determination as to the applicable law. No request for continuance of the hearing was made by appellant or any of the parties.
The hearing proceeded without objection to the conditions imposed for the conduct of the hearing and appellant's continued presence. Although the trial judge invited appellant to contact the Times' legal counsel to determine if he might provide some direction as to the applicable law relating to appellant's presence and her right to report the proceedings, appellant adhered to the Times' policy that a reporter was never to call counsel directly. However, at the noon recess of the hearing, appellant advised the city editor of the Times, her immediate supervisor, of the situation. The city editor, in turn, advised a senior editor who sought advice of counsel. The senior editor then advised the city editor to instruct appellant to withdraw from the hearing because of objections to the trial court's conditions and to avoid using information obtained at the hearing. When appellant again contacted her city editor, she was instructed to withdraw from the hearing but was mistakenly led to believe she had permission to use the information she had already obtained at the hearing. After the noon recess, upon her withdrawal from the hearing, the trial judge advised appellant that based upon the court's previous conditions and dependent on the court's further research of the law, appellant could be ordered not to disclose what she had previously learned. Appellant did not object to the court's instruction nor did she inform the court that she no longer intended to be bound by her previous consent to the court's condition to her attendance at the hearing.
Later that evening, the trial judge contacted appellant by telephone and informed her that she, the trial judge, had determined that the hearing was required by statute to be confidential. Appellant was ordered not to use the information obtained at the hearing. Appellant neither objected to the court's orders nor informed the trial judge that she intended to publish the information obtained. Appellant completed writing her article containing information obtained at the hearing and submitted it to the Times' night editing desk. The next day the article containing the restricted information was published by the Times.
On motion of the child's guardian ad litem, the trial judge issued an order to appellant to show cause why she should not be held in contempt for having published the restricted information. Counsel for the Times moved to intervene for a rehearing on the court's oral order closing the hearing. The court heard arguments on those motions and denied the motion for rehearing, ruling that the custody hearing was statutorily mandated to be closed and confidential by the requirements of section 39.408(2)(c), Florida Statutes (1985). Several weeks later, the trial court tried the contempt charge against appellant. Appellant testified that she did not intend to embarrass the trial judge or hinder the judicial process. The Times' editors apologized to the trial judge for their roles in the process by which the offending article was printed and said that they regretted the circuitous and bureaucratic manner in which they had addressed the problem. The trial judge determined that she had been embarrassed and the judicial process thwarted by the deliberate and intentional publication of information that appellant had been instructed, without objection and in the presence of six lawyers, not to publish. Accordingly, appellant was adjudicated guilty of indirect criminal contempt of court.
Appellant's principal argument in this appeal is that the trial court's adjudication of indirect criminal contempt is constitutionally infirm as a patently invalid order of prior restraint in violation of the constitutional guarantee of freedom of the press. Appellant relies chiefly on Globe Newspaper Co. *1174 v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978); Oklahoma Publishing Co. v. District Court, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977); and Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).
We agree with the principles of law stated in those cases and others relied upon by appellant. We do not agree with their applicability to the specific factual situation in which appellant allowed herself to become enmeshed. Appellant's deliberate contemptuous acts were in direct violation of the trial judge's orders resulting from the judge's commendable attempt to adhere to the law of this state while accommodating the rights of appellant and the parties to the cause below. In that limited context, our decision in this matter is not in violation of any of the precedents established by the cases relied upon by appellant.
On the contrary, we are adhering to the general principle established in those cases and more specifically to the precedent of our supreme court as established in In Re Adoption of H.Y.T., 458 So.2d 1127 (Fla. 1984). Considering the factual scenario of the occurrences below, H.Y.T. is the most recent, clear and directly applicable precedent available to us and we therefore must adhere to it. See Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). As Chief Justice Burger stated in writing for the Court in Nebraska Press Association, relative to the competing interests and rights of parties to a judicial proceeding and the freedom of the press to report those proceedings:
The problems presented in this case have a substantial history outside the reported decisions of courts, in the efforts of many responsible people to accommodate the competing interests. We cannot resolve all of them, for it is not the function of this Court to write a code. We look instead to this particular case and the legal context in which it arises.

427 U.S. at 550-51, 96 S.Ct. at 2799, 49 L.Ed.2d at 692. (Emphasis supplied.)
We would emphasize that we do not consider that this case involves either a "patently invalid order" or an order that imposed a "previous" or "prior" restraint on speech or the freedom of the press. The order allowing appellant's attendance at the hearing was subject to a condition to which appellant specifically agreed. Further, the orders of the trial judge cannot be considered "patently invalid" because they were in direct conformity and compliance with the dictates of section 39.408(2)(c). The trial judge had no alternative except to comply with the dictates of that statute. Accordingly, even though appellant has not raised a constitutional challenge to section 39.408(2)(c), we conclude we should demonstrate the validity of that statute construed in accord with H.Y.T., in order to explain why appellant's "patently invalid" argument must fail.
Section 39.408(2)(c), in its essential and pertinent parts, provides, regarding adjudicatory hearings in child dependency cases, that "[a]ll hearings involving unwed mothers, custody, sexual abuse, or permanent placement of children shall remain confidential and closed to the public." Section 39.408(2)(c), relating to the confidentiality, custody and permanent placement hearings for dependent children, is clearly indistinguishable in intent, scope and purpose from the provisions of section 63.162(1), Florida Statutes (1983), relating to confidentiality of adoption hearings.
Section 63.162(1) provides that:
All hearings held in proceedings under this act shall be held in closed court without admittance of any person other than essential officers of the court, the parties, witnesses, counsel, persons who have not consented to the adoption and are required to consent, and representatives of the agencies who are present to perform their official duties.
It was section 63.162(1) that our supreme court in H.Y.T. specifically considered in a media attack based on first amendment freedom of the press rights. The supreme court in H.Y.T. held section 63.162(1) to be constitutionally sound in the face of that media attack. While admittedly our supreme *1175 court in H.Y.T. did not discuss Nebraska Press Association, Globe Newspaper Co., Landmark Communications, Inc., Oklahoma Publishing Co., or any federal court decisions, we are nevertheless bound by the latest precedent as established by the Supreme Court of Florida that bears on the issues before us. See Hoffman. Inasmuch as we are unable on any ground to distinguish the constitutional implications of section 63.162 from section 39.408(2)(c), we are thus bound to follow the precedent of H.Y.T. and conclude that the restrictions imposed by section 39.408(2)(c) are constitutionally valid. Thus, the trial judge's orders seeking to insure compliance with that statute were not "patently invalid" but, on the contrary, in light of H.Y.T., were "patently valid."
Neither, as we have pointed out, is this a case involving an issue of "previous" nor "prior restraint." "Prior restraint" that is offensive to first amendment rights, while never definitively stated as such, seems clearly to be "prior judicial restraint." See Nebraska Press Association.[1] The "prior restraint," if any, involved in the issues before us is a prior legislative restraint imposed by section 39.408(2)(c), that not only required that the custody hearing below be "closed," but that its proceedings be "confidential."
Appellant was allowed to be present at that custody hearing only with her explicit agreement that should the trial judge determine that the statute was applicable, she, appellant, would abide by the requirements of the statutes and keep the matters confidential that she had been conditionally allowed to hear. That is hardly coercive conduct on the part of the trial judge as appellant attempts to argue. For this reason, the precedent of Landmark Communications, Inc. to the factual situation involving appellant below, is inapposite. Landmark Communications, Inc. involved the publication of information which the publisher had concerning a confidential judicial conduct inquiry. The publisher had obtained the information by legal means and not from the inquiry proceeding itself. The Virginia statute in question in Landmark Communications, Inc. made it a crime to divulge information regarding proceedings pending before a judicial review commission. Again, Chief Justice Burger, writing for the Court, stated:
The narrow and limited question presented, then, is whether the First Amendment permits the criminal punishment of third persons who are strangers to the inquiry, including the news media, for divulging or publishing truthful information regarding confidential proceedings of the Judicial Inquiry and Review Commission. We are not here concerned with the possible applicability of the statute to one who secures the information by illegal means and thereafter divulges it. We do not have before us any constitutional challenge to a State's power to keep the Commission's proceedings confidential or to punish participants for breach of this mandate. Nor does Landmark argue for any constitutionally compelled right of access for the press to those proceedings. Finally, as the Supreme Court of Virginia held, and appellant does not dispute, the challenged statute does not constitute a prior restraint or attempt by the State to censor the news media.

*1176 427 U.S. at 837-38, 96 S.Ct. at 1540-41, 56 L.Ed.2d at 9. (Emphasis supplied. Footnotes and citations omitted.)
Appellant argues on the basis of Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), that once she was allowed to be present at the hearing and acquired the information, it was information in the public domain and she was free to publish it. We reject that argument when appellant was allowed to acquire the information only under the conditions imposed by the court and which appellant expressly agreed to honor. The violation of appellant's uncoerced agreement with the trial judge by which appellant gained access to the statutorily mandated confidential hearing is as contemptuous of the trial court's judicial authority as is the publication of the confidential information itself. Appellant argues that Oklahoma Publishing Co. is authority to validate her conduct. We think not.
In Oklahoma Publishing Co., the Supreme Court had for consideration an Oklahoma statute that provided for juvenile hearings to be closed unless specifically opened to the public by court order. In appellant's case, section 39.408(2)(c) has no such alternative to the closed and confidential custody hearings covered therein. In Oklahoma Publishing Co., the Supreme Court could find no record that the trial judge there had directly and expressly ordered the hearing to be public. However, the Supreme Court held:
We think Cox and Nebraska Press are controlling nonetheless. Whether or not the trial judge expressly made such an order, members of the press were in fact present at the hearing with the full knowledge of the presiding judge, the prosecutor, and the defense counsel. No objection was made to the presence of the press in the courtroom or to the photographing of the juvenile as he left the courthouse. There is no evidence that petitioner acquired the information unlawfully or even without the State's implicit approval.

430 U.S. at 311, 97 S.Ct. at 1047, 51 L.Ed.2d at 358-359. (Emphasis supplied.)
The Court in Oklahoma Publishing Co. also emphasized that "petitioner does not challenge the constitutionality of the Oklahoma statutes relied on by the court below. Petitioner asks us only to hold that the First and Fourteenth Amendments will not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings which were in fact open to the public." 430 U.S. at 310, 97 S.Ct. at 1046, 51 L.Ed.2d at 357. The proceedings involving appellant below were never open to the extent that she had any implication that she was free to violate the confidentiality mandated by the statute and to which she had expressly conditioned her presence at the hearings.
Finally, neither does Globe Newspaper Co. offer support for appellant's position. Globe Newspaper Co. involved the right of access to a criminal trial and the constitutional challenge to a state statute that restricted that access during testimony of a minor victim of a sex offense. The statute in Globe Newspaper Co. was held unconstitutional. In contrast, we are required by reason of the Florida Supreme Court's holding in H.Y.T. to hold the statute involved in appellant's case constitutional. Globe Newspaper Co. also involved a constitutional right of access to a criminal trial, an area of "real public concern," as opposed to simply a matter of "public interest." See H.Y.T.; Firestone v. Time, 271 So.2d 745 (Fla. 1972).
Appellant also raises as an issue on this appeal the question of whether she acted with sufficient intent to constitute criminal contempt. Intent is normally a question to be resolved by the trier of fact. Ward v. State, 354 So.2d 438 (Fla. 3d DCA 1978). We find sufficient evidence to support the trial judge's finding in regard to appellant's intent.
Affirmed.
DANAHY, C.J., and HALL, J., concur.
NOTES
[1] See Nebraska Press Association v. Stuart, 427 U.S. 539 at 558 n. 5, 96 S.Ct. 2791 at 2802, n. 5, 49 L.Ed.2d 683 at 696 n. 5 (1976), which states:

In Near v. Minnesota, [283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)], Chief Justice Hughes was also able to say: "There is also the conceded authority of courts to punish for contempt when publications directly tend to prevent the proper discharge of judicial functions." 283 U.S., at 715, 75 L.Ed. 1357, 51 S.Ct. 625 [at 631]. A subsequent line of cases limited sharply the circumstances under which courts may exact such punishment. See Craig v. Harney, 331 U.S. 367, 91 L.Ed. 1546, 67 S.Ct. 1249 (1947); Pennekamp v. Florida, 328 U.S. 331, 90 L.Ed. 1295, 66 S.Ct. 1029 (1946); Bridges v. California, 314 U.S. 252, 86 L.Ed. 192, 62 S.Ct. 190, 159 A.L.R. 1346 (1941). Because these cases deal with punishment based on contempt, however, they deal with problems substantially different from those raised by prior restraint. See also Barist, The First Amendment and Regulation of Prejudicial Publicity  An Analysis, 36 Ford L.Rev. 425, 433-442 (1968).