589 So.2d 978 (1991)
In re INVESTIGATION: FLORIDA STATUTE 27.04, SUBPOENA OF Tim ROCHE, Appellant,
v.
STATE of Florida, Appellee.
No. 90-3071.
District Court of Appeal of Florida, Fourth District.
November 13, 1991.
Certification Denied December 27, 1991.
*979 Robert L. Lord, Jr., of Crary, Buchanan, Bowdish & Bovie, Chartered, Stuart, and Anne R. Noble of Baker & Hostetler, Washington, D.C., for appellant  Tim Roche.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Sarah B. Mayer, Asst. Atty. Gen., West Palm Beach, for appellee.
DOWNEY, Judge.
This case involves a consideration of the tension between the constitutional right of the public to unencumbered access to information from anonymous sources and the generalized governmental interests in protecting the secrecy of juvenile proceedings from public scrutiny. More particularly, the case focuses upon a determination of the priority of societal interests in requiring certain proceedings to remain confidential as opposed to a reporter's privilege against coerced disclosure of confidential sources.
The controversy underlying this appeal began in November, 1988, when three-year-old Crystal Lynn McGrath was tortured and beaten to death at the home of her mother, Cheryl Puffinberger, and her stepfather Carl Puffinberger. In January, 1989, amidst widespread publicity, Cheryl and Carl Puffinberger were both arrested on aggravated child abuse charges. Later that year Carl Puffinberger was sentenced to ten years' imprisonment for aggravated child abuse, while Cheryl Puffinberger pleaded no contest to neglect charges based on her failure to report the violence leading to Crystal's death and received a nine-month jail term. In November, 1988, after Crystal's death, her half-sister, Charlotte May Puffinberger, an infant, became a ward of the state and HRS sought to terminate the parents' parental rights. Carl Puffinberger relinquished his parental rights. In May, 1990, after a termination hearing, Judge Kanarek found Cheryl Puffinberger to be unstable and unfit and entered an order terminating her parental rights. This order was officially closed to public inspection pursuant to statute. A news story about this decision appeared the following day, May 30, 1990, in The Stuart News written by appellant Tim Roche.
On August 30, 1990, a subpoena was issued requiring Roche to give testimony in an action styled: In Re Investigation: Florida Statute 27.04, wherein the state attorney sought to investigate the apparent statutory violation in the public disclosure of the contents of the court's order in said proceeding. Roche filed a motion to quash the subpoena and for a protective order. Pursuant to a motion by the state, the trial court issued an order directing Roche to show cause why he should not be held in contempt for failing to answer questions regarding the state's investigation as to the source and identity of the person who provided Roche with the confidential order issued by Judge Kanarek. Following an evidentiary hearing on the matter, the trial court entered an order requiring Roche to reveal the identity of the person who provided him with a copy of Judge Kanarek's confidential order within ten days. The order further provided that, if Roche failed to comply, he was adjudicated guilty of indirect criminal contempt and sentenced to thirty days in the Martin County Jail, provided however that he could purge himself of the contempt at any time by complying with the court's order. On October 31, 1990, the state filed its affidavit of noncompliance with the court's order and Roche was adjudicated guilty of indirect criminal contempt. Roche then filed a notice of appeal from the trial court's order.
The parties agree that sections 39.411 and 39.467, Florida Statutes (1989), require that proceedings terminating parental rights are protected and not subject to public scrutiny. Furthermore, they acknowledge that under the auspices of the first amendment to both federal and state constitutions a reporter has a qualified privilege not to disclose his sources of information. CBS, Inc. v. Cobb, 536 So.2d 1067 (Fla.2d DCA 1988). As the rule itself *980 provides, the privilege is not absolute and may of necessity, in certain situations, give way to a greater right such as the societal interest served by the mandate that certain proceedings remain private and confidential. When presented with a conflict between these competing interests, the trial court must strike a proper balance between the reporter's constitutional right to the anonymity of his sources and society's interest to be protected by compelling disclosure. The criteria for determining the necessity of disclosure as set forth in Cobb are:
(1) whether the information sought is relevant to issues in the case; (2) whether any alternative source exists for the information; (3) whether there is a compelling interest in the information. Only if all three questions can be answered in the affirmative may a journalist be required to relinquish or disclose privileged matters.
Id. at 1070.
The Supreme Court of Florida analyzed the balancing test and its proper application in Miami Herald Publishing Co. v. Morejon, 561 So.2d 577 (Fla. 1990), while discussing the seminal case of Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972):
The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.
Id. at 579. The application of the rule was further explicated by the Morejon court in analyzing two Florida decisions, Morgan[1] and Huffstetler[2] as follows:
Since Branzburg this Court has twice had occasion to consider the existence and scope of the reporter's privilege in Florida. In Morgan v. State, 337 So.2d 951 (Fla. 1976), this Court overturned a contempt citation issued against a reporter for failing to reveal the identity of the source of information for her article, published in the Pasco Times, containing a synopsis of a sealed grand jury presentment. In deciding whether Morgan was privileged to refuse to reveal her source, this Court adopted the approach taken by Justice Powell in his concurring opinion in Branzburg, i.e., the application of the reporter's privilege in a given case involves striking a proper balance between constitutional and societal interests. We found that the public interest in unencumbered access to information from anonymous sources outweighed the generalized governmental interest in the secrecy of grand jury proceedings sought to be advanced in compelling disclosure of the confidential informant's identity. Thus, in Morgan we recognized for the first time a limited or qualified reporter's privilege against the forced revelation of confidential sources.
This Court further addressed the qualified reporter's privilege recognized by Morgan in Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla. 1986), which arose out of a challenge to a contempt citation issued against a Tampa Tribune reporter. The reporter coauthored a Tribune article announcing that an influential resident had filed a complaint with the ethics commission charging two county commissioners with misuse of office. When the reporter refused to reveal the identity of his confidential source, the circuit court found him guilty of contempt. This Court overturned the contempt citation. Following the case-by-case balancing analysis utilized in Morgan, we held that the limited and qualified privilege that a reporter has to protect his sources of information outweighed the public interests in prosecution of a violation of a statute which basically amounts to a private interest in reputation.
Id. at 579-580.
In passing, we note that the state relies to some extent on the Morejon case. However, other than setting forth the guidelines relevant to determining the balancing *981 test applicable to a reporter's qualified privilege not to disclose his confidential sources, we find little factual similarity to this case. In Morejon the reporter divulged what he personally observed and not what was told to him by some private source. Thus, as the supreme court said therein:
We adhere to the district court's conclusion that there is no privilege, qualified, limited, or otherwise, which protects journalists from testifying as to their eye-witness observations of a relevant event in a subsequent court proceeding. The fact that the reporter in this case witnessed the event while on a newsgathering mission does not alter our decision. Holding that the limited and qualified privilege set forth by this Court in Morgan and Huffstetler has absolutely no application in this case makes it unnecessary to balance the respective interests involved.
Id. at 580 (footnote omitted).
The parties agree further that requirements one and two of the balancing test were met in the trial court presentation; issue was joined there and here in regard to requirement three. Roche contends that, under the facts of this case, there is no compelling interest in requiring him to divulge his sources because the privacy interests of this child have long since been blown, so to speak, by the earlier pervasive publicity surrounding the case and its background. Furthermore, Roche relies upon the cases of Morgan v. State, 337 So.2d 951 (Fla. 1976), and Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla. 1986), wherein the Florida Supreme Court held that a generalized interest in the secrecy of government operations should not ordinarily take precedence over the interest involved in assuring the public access to information that comes to the press from confidential sources. Those cases, as pointed out earlier, declined to give priority to the law sealing grand jury indictments or the law providing confidentiality in dealing with ethical violations of public officials.
Appellee responds initially by calling attention to the fact that in both Morgan and Huffstetler the real interest sought to be protected was private and not of sufficient moment to outweigh the importance of the first amendment right under consideration. However, the same cannot be said of the interest in protecting the rights of children which has always been of primary importance and given preferential treatment by the courts of this land. For example, in In re: Adoption of H.Y.T., 458 So.2d 1127 (Fla. 1984), the court upheld the constitutionality of section 63.162(1), Florida Statutes (1983), against a challenge by the press that the statute making adoption proceedings confidential did not outweigh the media's first amendment right of access to court proceedings. The court then recognized the "overriding public policy of protecting from harmful publicity parties to and the subject of adoption proceedings," the thrust of which proceeding is to serve the best interests of the child involved. It is noteworthy that in H.Y.T. the court expressly rejected the media argument that there had already been widespread publicity in the case affecting the child's right of privacy. That argument, said the court, "attempts to lay on the shoulders of the child the burden of proving a need for the protection the people of the state, through the legislature, have attempted to afford the parties to an adoption." Id. at 1129. Later, in Mayer v. State, 523 So.2d 1171 (Fla. 2d DCA 1988), the Second District Court of Appeal followed the ruling in H.Y.T. and concluded that, on the facts of that case, the privacy rights of minors as protected by the statutes involved therein took precedence over the media's first amendment rights involved.
We conclude, as did the trial judge, that the purposes served by maintaining the confidentiality of juvenile dependency and termination of parental rights proceedings were contravened by Roche's disclosure of the court order involved herein and that such action on his part was not qualifiedly privileged.
The order appealed from is therefore affirmed.
GUNTHER and FARMER, JJ., concur.
NOTES
[1] Morgan v. State, 337 So.2d 951 (Fla. 1976).
[2] Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla. 1986).