NEW YORK TIMES CO. ET AL. *v.* JASCALEVICH

No. A–38.   Decided July 12, 1978

MR. JUSTICE MARSHALL.

The New York Times and one of its journalists have applied to me for a stay of an order of the Supreme Court of New Jersey, issued July 6, 1978, pending the filing and disposition of applicants' petition for certiorari.   MR. JUSTICE WHITE yesterday denied the application, and the pertinent facts are stated in his opinion.   *Ante,* p. 1301.   The principle issue that applicants intend to raise in their petition for certiorari is whether,

> "when a motion to quash a subpoena *duces tecum* issued to the news media is made, the court before which such motion is returnable shall be required to make threshold determinations with respect to the facial invalidity of the subpoena, as well as preliminary rulings on materiality and privilege, *prior to* compelling the production of all subpoenaed materials."   Application 10 (emphasis in original).

The standards for issuance of a stay pending disposition of a petition for certiorari are well established.   Applicants bear the burden of persuasion on two questions: whether there is "a balance of hardships in their favor"; and whether four Justices of this Court would likely vote to grant a writ of certiorari.   *Beame* v. *Friends of the Earth,* 434 U. S. 1310,

1312–1314 (1977) (MARSHALL, J., in chambers). Their "burden is particularly heavy when, as here, a stay has been denied by the [lower courts]," *id.*, at 1312, in this case including two appellate courts as well as the trial court. Here, moreover, a stay has been denied by another Justice of this Court.

I do not believe that applicants have met their burden. There are, of course, important and unresolved questions regarding the obligation of a newsperson to divulge confidential files and other material sought by the prosecution or defense in connection with criminal proceedings. It may well be, moreover, that forced disclosure of these materials, even to a judge for *in camera* inspection, will have a deleterious effect on the ability of the news media effectively to gather information in the public interest, as is alleged by applicants.

It does not follow, however, that applicants are entitled to a stay at this stage in the proceedings. It has been the rule in the federal courts for many years that

> "one to whom a subpoena is directed may not appeal the denial of a motion to quash that subpoena but must either obey its commands or refuse to do so and contest the validity of the subpoena if he is subsequently cited for contempt on account of his failure to obey." *United States* v. *Ryan,* 402 U. S. 530, 532 (1971), citing *Cobbledick* v. *United States,* 309 U. S. 323 (1940).

While this rule is based on a federal statute and is thus not directly applicable here, the policies underlying it are clearly relevant to resolution of this stay application. These policies include a desire to avoid "obstructing or impeding an ongoing judicial proceeding" and a corresponding interest in "hasten[ing] the ultimate termination of litigation." *United States* v. *Nixon,* 418 U. S. 683, 690 (1974); see *Cobbledick* v. *United States, supra,* at 324–326. Such considerations cannot be ignored in evaluating the "balance of hardships" in this case

1306

and the likelihood that four Justices would vote to grant certiorari.

Applicants are seeking a stay and certiorari in the midst of an ongoing criminal trial. If a stay were granted, the trial might be interrupted to await this Court's decision on the certiorari petition, or, if the trial proceeded to conviction, reversal on appeal might result from the defendant's inability to obtain evidence that he apparently considers vital to his defense. It is true, of course, that either of these undesirable outcomes might occur if applicants refuse to comply with the subpoena and are adjudicated in contempt. At that point, however, the judicial system would have done all that it could do to obtain the materials sought by the defense.

In light of these considerations, applicants are plainly not entitled to a stay at this time. This conclusion is buttressed by the fact that, if applicants do refuse to comply with the subpoena, they presumably will have an opportunity in subsequent contempt proceedings to raise the same arguments that they seek to raise here. This case, moreover, involves an order to turn materials over to a judge for *in camera* inspection; whether the materials will eventually be released to the defense and the public is a matter yet to be litigated.

The application for a stay is denied.