# NEW YORK TIMES CO. ET AL. v. JASCALEVICH

No. A–111. Decided August 1, 1978

MR. JUSTICE WHITE.

This is an application for a stay of an order of the Supreme Court of New Jersey refusing to stay, except temporarily to permit this application, an order of the Superior Court of New Jersey holding applicants in civil contempt for refusing to obey a subpoena for documents that was issued at the behest of the defendant in the course of an ongoing murder trial and that the Superior Court refused to quash.[1] Applicant Farber, a reporter for the New York Times, a newspaper, was committed to jail until he complied with the subpoena by submitting the requested documents for *in camera* inspection by the trial judge; and the New York Times Co., the corporation owning and controlling the newspaper, was ordered to pay $5,000 for each day of noncompliance with the subpoena. Both applicants were also found guilty of criminal contempt. On appeal to the Superior Court of New Jersey, Appellate Division, that court stayed the convictions for criminal contempt but refused to stay the civil contempt judgment. It did expedite the appellate proceedings, which are still pending. The Supreme Court of New Jersey in turn refused to stay the Superior Court's judgment and to take immediate jurisdiction of the appeal.

---

[1] Judge Arnold informed applicants that he would not rule on the merits of their motion to quash until he had the opportunity to examine the documents *in camera*. He then ordered the production of the documents for his inspection. Applicants unsuccessfully appealed through the New Jersey system seeking a stay of Judge Arnold's order. They then took their application to two individual Justices of this Court, both of whom denied relief. *Ante,* p. 1301 (WHITE, J., in chambers); *ante,* p. 1304 (MARSHALL, J., in chambers).

This application for stay, which then followed, was addressed to MR. JUSTICE BRENNAN, but upon his recusal was referred to me at 11 a. m. on July 28. Because the stay entered by the New Jersey Supreme Court would otherwise have expired an hour later, a temporary stay was entered to permit an examination of the somewhat voluminous papers filed in support of the application and to consider a response which was requested from respondent.

There is an initial question of the jurisdiction of an individual Justice or of the Court to enter a stay in circumstances such as these. Under 28 U. S. C. § 2101 (f), a stay is authorized only if the judgment sought to be stayed is final *and* is subject to review by the Supreme Court on writ of certiorari.[2] Whether a state-court judgment is subject to review by the Supreme Court on writ of certiorari is in turn governed by 28 U. S. C. § 1257, which provides that we have jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had . . . ." Also, it is only final judgments with respect to issues of federal law that provide the basis for our appellate jurisdiction with respect to state-court cases.

Although an order, such as is involved in this case, refusing to quash a subpoena and directing compliance would ordinarily

---

[2] "In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court, and may be conditioned on the giving of security, approved by such judge or justice, that if the aggrieved party fails to make application for such writ within the period allowed therefor, or fails to obtain an order granting his application, or fails to make his plea good in the Supreme Court, he shall answer for all damages and costs which the other party may sustain by reason of the stay."

not satisfy the finality requirement, *United States* v. *Nixon,* 418 U. S. 683, 690–691 (1974), and cases cited, a criminal or civil contempt judgment imposed for refusing to obey the order presents a different consideration. At least where such judgments are entered against nonparty witnesses, such as the present applicants, the judgments are "final" for the purposes of appellate jurisdiction within the federal system.[3] They are also final for purposes of this Court's jurisdiction to review state-court judgments if they have been rendered by the highest court of the State in which decision could be had.

In this case, the New Jersey Superior Court entered civil and criminal contempt judgments against each of the applicants. Appeals from these judgments are pending in the Appellate Division. The criminal contempt judgments have been stayed; but both the Appellate Division and the New Jersey Supreme Court have refused to stay the judgments for civil contempt, and it is the civil judgment that is the object of the present stay application. Because the judgment for civil contempt remains under review in the New Jersey appellate courts, it would not appear to be a final judgment "rendered by the highest court of a State in which a decision could be had." This was the case in *Valenti* v. *Spector,* 79 S. Ct. 7, 3 L. Ed. 2d 37 (1958), where Mr. Justice Harlan, as Circuit Justice, was asked to stay an order committing applicants to jail for contumacious refusal to answer certain questions. He denied the applications "for lack of jurisdiction,

---

[3] *Nelson* v. *United States,* 201 U. S. 92, 97–98 (1906); *Bessette* v. *W. B. Conkey Co.,* 194 U. S. 324, 337–338 (1904); *United States* v. *Reynolds,* 449 F. 2d 1347 (CA9 1971); *In re Vericker,* 446 F. 2d 244 (CA2 1971); *In re Manufacturers Trading Corp.,* 194 F. 2d 948, 955 (CA6 1952); see *Doyle* v. *London Guarantee Co.,* 204 U. S. 599, 605 (1907); cf. *Nye* v. *United States,* 313 U. S. 33 (1941); *Fox* v. *Capital Co.,* 299 U. S. 105, 107 (1936); *Alexander* v. *United States,* 201 U. S. 117, 121 (1906). See generally 9 J. Moore, Federal Practice ¶ 110.13 [4], p. 166 (1975).

and, in any event, in the exercise of my discretion," saying among other things:

". . . The federal questions sought to be presented going to the validity of these commitments are prematurely raised here, since none of them has yet been passed upon by the highest court of the State in which review could be had. See 28 U. S. C. § 1257. . . . The appeals of petitioners Valenti, Riccobono, Mancuso and Castellano are still pending undetermined in the state Appellate Division. The direct appeal of petitioner Miranda to the state Court of Appeals also stands undetermined." *Id.,* at 8, 3 L. Ed. 2d, at 39.

The rule would appear to be, as Mr. Justice Goldberg observed: "Of course, no stay should be granted pending an appeal which would not lie." *Rosenblatt* v. *American Cyanamid Co.,* 86 S. Ct. 1, 3, 15 L. Ed. 2d 39, 42 (1965) (in chambers).

Applicants insist, however, that the refusal to stay the civil contempt judgments brings the case within 28 U. S. C. §§ 1257 and 2101 (f) because (1) if the applicants comply with the order, they forfeit the very First Amendment right which they claim, that is, the right to refuse to turn over to a court what they consider to be the confidential files of the reporter, at least until the court demanding them has provided further justification for its order than it has to this date; and (2) if applicants do not comply, they will suffer continuing and irreparable penalties for exercising their claimed First Amendment rights.

Applicants are not without some support for their position. In *Nebraska Press Assn.* v. *Stuart,* 423 U. S. 1327 (1975) (BLACKMUN, J., in chambers), a state trial court had entered an order prohibiting the publication of certain information about a pending criminal case. The order was not stayed pending appeal to the Nebraska Supreme Court. After initi-

ally refusing a stay, 423 U. S. 1319 (1975), MR. JUSTICE BLACKMUN concluded that the delay in the Nebraska courts "exceed[ed] tolerable limits" and entered a partial stay. He recognized that in a meaningful sense "the lower court's judgment is not one of the State's highest court, nor is its decision the final one in the matter," 423 U. S., at 1329; but he reasoned that a partial stay should be entered anyway:

"Where, however, a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment. The suppressed information grows older. Other events crowd upon it. To this extent, any First Amendment infringement that occurs with each passing day is irreparable. By deferring action until November 25, and possibly later, the Supreme Court of Nebraska has decided, and, so far as the intervening days are concerned, has finally decided, that this restraint on the media will persist. In this sense, delay itself is a final decision. I need not now hold that in any area outside that of prior restraint on the press, such delay would warrant a stay or even be a violation of federal rights. Yet neither can I accept that this Court, or any individual Justice thereof, is powerless to act upon the failure of a State's highest court to lift what appears to be, at least in part, an unconstitutional restraint of the press. When a reasonable time in which to review the restraint has passed, as here, we may properly regard the state court as having finally decided that the restraint should remain in effect during the period of delay. I therefore conclude that I have jurisdiction to act upon that state-court decision." *Id.,* at 1329–1330.

It should also be noted that the Court later found it unnecessary to decide whether the stay had been properly entered, *Nebraska Press Assn.* v. *Stuart,* 423 U. S. 1010 (1975), but

that in deciding the merits of the controversy, the Court referred to MR. JUSTICE BLACKMUN's "careful decision" with respect to the stay issue, *Nebraska Press Assn.* v. *Stuart,* 427 U. S. 539, 544 n. 2 (1976).

Of course, MR. JUSTICE BLACKMUN partially stayed an order imposing a prior restraint upon the press, and this is not a prior-restraint case. Farber has been jailed and the company has been fined until they comply with the court's order, but it is doubtful, to say the least, that a state court's refusal to grant bail or to stay a criminal judgment pending appeal in the state courts automatically transforms the judgment into a case reviewable here on the merits and hence subject to a stay order under § 2101 (f) by the Court or by an individual Justice. I am nevertheless inclined to think that the question of our jurisdiction is not frivolous and is sufficiently substantial that the Court and an individual Justice necessarily have power to issue a stay pending a final determination of the jurisdictional issue—and should enter such a stay if there are otherwise adequate grounds for doing so.

Proceeding on this basis, then, I conclude that the application for stay should be denied. There is no present authority in this Court either that newsmen are constitutionally privileged to withhold duly subpoenaed documents material to the prosecution or defense of a criminal case or that a defendant seeking the subpoena must show extraordinary circumstances before enforcement against newsmen will be had. Cf. *Branzburg* v. *Hayes,* 408 U. S. 665 (1972); see *Zurcher* v. *Stanford Daily,* 436 U. S. 547, 566–567 (1978). But even if four or more Members of the Court would hold that a reporter's obligation to comply with the subpoena is subject to some special showing of materiality not applicable in the case of ordinary third-party witnesses, I would not think that they would accept review of this case at this time. The order at issue directs submission of the documents and other materials for only an

*in camera* inspection; it anticipates a full hearing on all issues of federal and state law; and it is based on the trial court's evident views that the documents sought are sufficiently material to warrant at least an *in camera* inspection.

In *United States* v. *Nixon,* 418 U. S. 683 (1974), we recognized a constitutionally based privilege protecting Presidential communications in the exercise of Art. II powers, but we held that there had been a sufficient initial showing of materiality to warrant requiring the President to submit the subpoenaed documents for *in camera* examination. Here, the Superior Court has twice issued a certificate under the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, N. J. Stat. Ann. §§ 2A:81–18 to 2A:81–23 (West 1976), declaring that the documents sought "are necessary and material" for the defendant on trial for murder in the New Jersey courts. In the first certificate the court declared that the materials sought

> "contain statements, pictures, memoranda, recordings and notes of interviews of witnesses for the defense and prosecution in the above proceeding as well as information delivered to the Bergen County Prosecutor's Office, and contractual information relating to the above. Specifically, the documents include a statement given to Mr. Farber by Lee Henderson of Whitmere, South Carolina and other witnesses and notes, memoranda, recordings, pictures and other writings in the possession, custody or control of The New York Times and/or Myron Farber."

On the second occasion, the court certified:

> ". . . That I have reviewed the petition of Raymond A. Brown and find, inter alia, that substantial constitutional rights of Dr. Jascalevich to a fair trial, compulsory process and due process of law are in jeopardy without the appearance of Myron Farber and the documents so that an in camera examination can be made.

1324

". . . That this certificate is made with the full awareness of the totality of the proceeding before the Court—pre-trial, in the presence of the jury and outside the presence of the jury—which are hereby referenced. These include the testimony of: Myron Farber, Dr. Baden, Mr. Herman Fuhr, Judge Galda, Judge Calissi, Mr. Herman Fuhr [sic], Mr. John Fischer, Detective Lange, Mr. Joseph Woodcock, and the proceedings regarding Myron Farber and the New York Times."

These determinations were made by a trial judge after sitting through some 22 weeks of a criminal trial and based, among other grounds, on a defendant's right to call witnesses for his defense, which includes the right to secure witnesses and materials for the purpose of impeaching the witnesses against him. Cf. *Davis* v. *Alaska,* 415 U. S. 308 (1974). Furthermore, these conclusions have not been disturbed by the New Jersey appellate courts, each of which has refused to stay the order for *in camera* inspection as well as the ensuing civil contempt judgments. In my view, the proceedings to date satisfy whatever preconditions to the enforcement of the subpoena that may be applicable in this case.

On this record, I would not vote to grant certiorari and am unconvinced that four other Justices would do so. It also appears to me, as it did on the earlier application for stay, that *in camera* inspection of these documents by the court will not result in any irreparable injury to applicants' claimed, but unadjudicated, rights that would warrant staying the enforcement of the subpoena at this time, with its consequent impact on a state criminal trial. It should also be noted that applicants' resistance to the subpoena and the order rest on state law as well as federal grounds; that the Superior Court deems inspection necessary to inspect the documents in connection with ruling on the state claims including the claim of protection under the state "Shield" statute; and that if applicants prevail on those grounds, it will be unnecessary to deal

with whatever federal constitutional grounds might also be urged.

For these reasons, I decline to grant the application for stay pending the filing of a petition for certiorari, and the temporary stay I have entered will expire at 12 noon tomorrow, August 2, 1978.