## No. 79SA54

**Howard Pankratz v. the District Court in and for the City and County of Denver, State of Colorado, the Honorable Edward C. Day, one of the judges thereof.**

(609 P.2d 1101)

Decided April 14, 1980.

White and Steele, P.C., Walter A. Steele, for petitioner.

John M. Kobayashi, Court-Appointed Special Prosecutor, Jeffrey A. Chase, for respondents.

*En Banc.*

JUSTICE LEE delivered the opinion of the Court.

In this original proceeding, we issued a rule to show cause why a subpoena should not be quashed and set aside. The subpoena had been issued by the respondent district court to the petitioner for a contempt of court hearing for violation of the grand jury secrecy rules.

On December 13, 1978, Robert C. Ozer, then Director of the Medicaid Fraud Unit of the State of Colorado, allegedly disclosed to petitioner, a *Denver Post* reporter, a list of anticipated indictments and the names of persons to be indicted by the 1978 Statutory Grand Jury, before the grand jury had returned any indictments or even had deliberated on indictments. The district court issued a contempt citation to Ozer for violation of the requirements of secrecy of grand jury proceedings, C.R.C.P. 6.2 and Rule 41(e) of Local Rules of Practice of the District Court of the Second Judicial District.

A subpoena duces tecum ad testificandum was served on petitioner, Howard Pankratz, commanding him to appear and testify and to produce certain of his notes at the hearing to show cause why Robert C. Ozer should not be held in contempt of court for his unlawful disclosures of December 13, 1978.

Pankratz admitted having interviewed Ozer on December 13, but moved to quash the subpoena on the grounds that he had made an "agreement of confidentiality" with Ozer, that he had not published the information he received, and that he possesses a news reporter's privilege not to testify or produce documentary evidence.

The district court denied Pankratz' motion to quash the subpoena, holding that "when a reporter has observed or participated in criminal or wrongful conduct and is subpoenaed to testify and to produce documents relating to the conduct which is the subject matter of the charge, he stands in the same shoes as any ordinary citizen and can claim no special privilege."

We are here asked to resolve the question of whether there is a constitutionally-based reporter's privilege that would shield Pankratz from complying with the subpoena issued by the district court. Pankratz asserts that such a privilege exists under the First Amendment to the United States Constitution and under Article II, Section 10 of the Colorado Constitution. We do not agree that Pankratz had such a privilege under the circumstances of this case.

In determining that there is no privilege under the First Amendment, we need only cite the language of the United States Supreme Court in *Branzburg v. Hayes,* 408 U.S. 665, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972):

". . . We are asked to create another [privilege] by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do.

. . . .

". . . [W]e cannot seriously entertain the notion that the First Amendment protects a newsman's agreement to conceal the criminal conduct of his source, or evidence thereof, on the theory that it is better to write about crime than to do something about it. *Insofar as any reporter in these cases undertook not to reveal or testify about the crime he witnessed,* his claim of privilege under the First Amendment presents no substantial question. The crimes of news sources are no less reprehensible and threatening to the public interest when witnessed by a reporter than when they are not." (Emphasis added.)

This decision by the Supreme Court was reaffirmed in *New York Times Co. v. Jascalevich,* 439 U.S. 1301, 98 S.Ct. 3058, 58 L.Ed.2d 9 (1978): "There is no present authority in this Court that a newsman need not produce documents material to the prosecution or defense of a criminal case [citing *Branzburg v. Hayes*], or that the obligation to obey an otherwise valid subpoena served on a newsman is conditioned upon the showing of special circumstances." (White, J., in chambers.)[1]

We also decline to create such a testimonial privilege for news reporters under Article II, Section 10 of the Colorado Constitution, for the

---

[1] This was the first of three applications to the Supreme Court for a stay in that case. In this instance, Justice White denied an application for a stay of an order of the New Jersey Supreme Court, which had refused the stay and denied leave to appeal from an order of a trial court refusing to quash a subpoena for certain documents in the course of an ongoing murder trial. Reapplication for stay was also denied. 439 U.S. 1304 (Marshall, J., in chambers). Finally, applicants sought a stay of an order of the New Jersey Superior Court holding them in civil contempt for refusing to obey the subpoena for documents. The stay was denied, with Justice White, in chambers, again noting that "There is no present authority in this Court either that newsmen are constitutionally privileged to withhold duly subpoenaed documents material to the prosecution or defense of a criminal case or that a defendant seeking the subpoena must show extraordinary circumstances before enforcement against newsmen will be had." *New York Times Co. v. Jascalevich,* 439 U.S. 1317, 99 S.Ct. 6, 58 L.Ed.2d 25 (1978).

persuasive reasons articulated by Mr. Justice White in *Branzburg v. Hayes, supra:*

". . . [W]e perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial."

■ Where a news reporter, who is a first-hand observer of criminal conduct, is subpoenaed to testify and to produce relevant documents "in the course of a valid grand jury investigation or criminal trial," there is no privilege under the Colorado Constitution to refuse to respond to the subpoena. This is particularly true when applied to the facts of this case. The reporter is not attempting to prevent the disclosure of the identity of the source of his information, nor has he denied receiving the information concerning possible grand jury indictments and putative defendants. It is his informant's disclosure of that information which constitutes the criminal conduct which is the subject of the contempt hearing. The district court specifically found that Pankratz is "a central witness for the prosecution; he is allegedly the only person who was present during the entire period, from the beginning of the meeting with Ozer to its conclusion."

We have reviewed the cases cited by petitioner in support of his position and find them to be inapposite to the issue before us. Among the cases he relied upon are: *Silkwood v. Kerr McGee,* 563 F.2d 433 (10th Cir. 1977) [civil action]; *Baker v. F & F Investment,* 470 F.2d 778 (2nd Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973) [civil rights class action]; *Loadholtz v. Fields,* 389 F. Supp. 1299 (M.D. Fla. 1975) [civil action]; *Democratic National Committee v. McCord,* 356 F. Supp. 1394 (D.D.C. 1973) [civil action]; *Zelenka v. State,* 83 Wis.2d 601, 266 N.W.2d 279 (1978) [court found that the *news reporter had not observed the crime* for which the defendant was convicted and that any information which the reporter might have disclosed "would have been, at best, only remotely relevant to the issues at hand"]; *Morgan v. State,* 337 So.2d 951 (Fla. 1976) [the court held that the contempt proceedings brought against the reporter for failure to reveal his sources "were not brought to punish violation of a criminal statute and were not part of an effort to obtain information needed in a criminal investigation"]. We have found no case to support the proposition that a news reporter who actually witnesses the criminal act has a qualified constitutional privilege to refuse to respond to a subpoena.

■ We find no testimonial privilege, under the federal or the Colorado constitution, which would shield petitioner from an obligation to respond to the subpoena which has been issued to him.

Accordingly, we discharge the rule.
JUSTICE ROVIRA specially concurring.
JUSTICE DUBOFSKY does not participate.

JUSTICE ROVIRA specially concurring:
I agree with the result reached by the majority, because the findings of the respondent trial court reflect that the prosecution has met the test which I believe is applicable; that is, that there is probable cause to believe that the reporter has information that is clearly relevant, that such information cannot be obtained by alternative means, and there is a compelling need for the information. *See* dissent of Mr. Justice Stewart in *Branzburg v. Hayes, supra.*

The facts and circumstances of this case dictate the result. The trial court found that the testimony of the petitioner "goes to the very heart" of the charge against Mr. Ozer, thereby determining that the information was relevant. Further, the court found that petitioner was the only person who was present during a meeting with Mr. Ozer "from the beginning of the meeting [with Ozer] to its conclusion" and logically concluded that the information could not be obtained by alternative means.

Although the trial court rejected the compelling need test, it assumed *arguendo* that such must be shown and concluded that it had been established in this case because of the need to enforce the rules relating to the secrecy of grand jury proceedings.

It is my view that Article II, Section 10, of the Colorado Constitution need not and should not be limited in the manner in which the majority in *Branzburg v. Hayes* has limited the freedom of press guaranteed by the First Amendment. The *ad hoc* balancing test which I believe appropriate takes into consideration the needs of a free press to investigate and the needs of the state to have the testimony of every person available in judicial proceedings.