opinion of the court
M. Andrew Dwyer, Jr., J.
This is a motion to quash a subpoena ad testificandum returnable before a Special Grand Jury in Rensselaer County which is conducting an investigation into disclosure of a certain sealed Grand Jury report.
Richard Beach an employee of General Electric Broadcasting Corporation which operates channel 6 WRGB has been subpoenaed to give evidence.
The facts as stated in Mr. Beach’s own affidavit are:
“12. During the course of my investigation, I was contacted by a source and given information regarding a sealed Grand Jury report.
“13. My employer subsequently broadcast on October 27 and 28, 1982, information which I had obtained from my source regarding the sealed Grand Jury report. The broadcast included the allegation that Sheriff Eaton was one of the public officials named in the sealed Grand Jury report, which alleged misfeasance and malfeasance in office and which recommended his removal.
*196 “14. These broadcasts were made concerning a public official involving a matter of legitimate public interest and concern. There have been numerous instances where Grand Jury reports involving misfeasance or malfeasance by public officials have been sealed and never made public. I believe that the Grand Jury system, at times, has been manipulated improperly and influenced by political considerations. I disclosed the information solely in the public interest.
“15.1 had an express agreement, which was requested by my source, that I would not divulge the name of my source nor in any manner identify my source.”
GPL 190.85 which deals with Grand Jury reports clearly states that a report recommending removal or disciplinary action shall remain sealed until at least 31 days after the report has been served on the public servant named or, if an appeal is taken, until it is decided.
Section 215.70 of the Penal Law reads as follows:
“A person is guilty of unlawful grand jury disclosure when, being a grand juror, a public prosecutor, a grand jury stenographer, a grand jury interpreter, a police officer or a peace officer guarding a witness in a grand jury proceeding, or a clerk, attendant, warden or other public servant having official duties in or about a grand jury room or proceeding, or a public officer or public employee, he intentionally discloses to another the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding which is required by law to be kept secret, except in the proper discharge of his official duties or upon written order of the court. Nothing contained herein shall prohibit a witness from disclosing his own testimony.
“Unlawful grand jury disclosure is a class E felony.”
It is self-evident that Richard Beach and his employer unilaterally decided to deprive Sheriff Eaton of due process of law and they now seek to secure it for themselves.
Special Prosecutor Donald J. Shanley, Esq., seeks to have Richard Beach testify and name his source to the Special Grand Jury upon the theory that the information was given to newscaster Beach by a public officer or *197 employee and that newscaster Beach witnessed a crime and that he may in fact be in pari delicto under section 20.00 of the Penal Law of the State of New York and thus subject to prosecution himself.
Newscaster Beach through his attorneys contends that under the provisions of section 79-h of the Civil Rights Law he is exempt from contempt as a professional journalist and newscaster.
Beach claims that if the subpoena is not quashed and he is forced to appear before the Grand Jury that he will not reveal his source and that section 79-h protects him from contempt before the Grand Jury.
Special Prosecutor Shanley on the other hand claims, “The Branzburg decision controls the case at Bar.”
Branzburg v Hayes (408 US 665) concerned a news story authored by reporter Branzburg together with a photograph which described a scene he witnessed of a person mixing hashish. He refused to reveal the identity of the person to the Grand Jury and contended he was protected by the Kentucky “Shield Law” (similar to our section 79-h of the Civil Rights Law also referred to as a “Shield Law”).
Upon review the United States Supreme Court held, by a 5 to 4 decision, essentially, that First Amendment protection would not be extended to a newsman who witnessed the commission of a crime and that no protection would be extended to a reporter who aided and abetted the commission of that crime.
The case before us is clearly distinguishable from Branzburg on its facts. In Branzburg the reporter stated he had witnessed a crime. In this case it is speculation that Beach’s informant was a public official, therefore it is speculation as to whether or not Richard Beach witnessed a crime. In this instance, section 79-h of the Civil Rights Law is applicable.
The question is, “Does Section 79-h of the Civil Rights Law give the newscaster, absolute privilege under the circumstances at issue here?”
In my opinion it does. Section 79-h derives its authority from the Bill of Rights to the United States Constitution and from the New York State Constitution.
*198 The very First Amendment to the Constitution of the United States states, “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.”
“The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One’s right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.” (Board of Educ. v Barnette, 319 US 624, 638.)
“If they [the first 10 amendments] are incorporated into the constitution, independent tribunals of justice will consider themselves in a peculiar manner the guardians of those rights; they will be an impenetrable bulwark against every assumption of power in the legislative or executive; they will be naturally led to resist every encroachment upon rights expressly stipulated for in the constitution by the declaration of rights.” (James Madison, 1 Annals of Congress, 1789.)
This court feels bound by those principles.
“In questions of power, then, let no more be heard of confidence in man, but bind him down from mischief by the chains of the Constitution.” (Thomas Jefferson, Kentucky Resolutions, Nov., 1798.)
“The basis of our governments being the opinion of people, the very first object should be to keep that right; and were it left to me to decide whether we should have a government without newspapers, or newspapers without a government, I should not hesitate a moment to prefer the latter.” (Thomas Jefferson, Letter to Edward Carrington, Jan. 16, 1787.)
In the light of what was done here, however, the words of Alexis DeTocqueville are particularly apt, “In this question, therefore, there is no medium between servitude and *199 license; in order to enjoy the inestimable benefits that the liberty of the press insures, it is necessary to submit to the inevitable evils that it creates.”
Accordingly, the subpoena is quashed.