In the Matter of RICHARD BEACH, Respondent, v DONALD J. SHANLEY, as Special District Attorney of Rensselaer County, Appellant.

Third Department, July 21, 1983

APPEARANCES OF COUNSEL

*Donald J. Shanley,* appellant *pro se.*

*O'Connell & Aronowitz, P. C. (Peter L. Danziger* of counsel), for respondent.

OPINION OF THE COURT

YESAWICH, JR., J.

At issue is whether a news reporter possesses an absolute constitutional or statutory privilege against divulging the identity of a news source to an investigating Grand Jury. On September 1, 1982, a Rensselaer County Grand Jury issued three reports concerning its examination of

alleged criminal conduct by two employees of the county's Sheriff's department. One of these reports recommended that administrative action be taken to improve the quality of department performance and was immediately released to the public. The other two reports were sealed pursuant to CPL 190.85 (subd 3) which mandates that a report shall not be made public until at least 31 days after it has been served upon any public servant named therein.

On October 26, 1982, in accordance with the statute, one of the sealed reports was served upon Sheriff Eugene Eaton. The next day, petitioner Richard Beach, a television newscaster, was notified by a source, whose identity he promised not to disclose, that the sealed report contained allegations against Eaton and recommended his removal from office. On both October 27 and October 28, Beach's employer aired a filmed news report in which Beach recounted the information he had received from his source regarding the Grand Jury's sealed report.

Under section 215.70 of the Penal Law, unlawful Grand Jury disclosure, a class E felony, consists of the following: "A person is guilty of unlawful grand jury disclosure when, being a grand juror, a public prosecutor, a grand jury stenographer, a grand jury interpreter, a police officer or a peace officer guarding a witness in a grand jury proceeding, or a clerk, attendant, warden or other public servant having official duties in or about a grand jury room or proceeding, or a public officer or public employee, he intentionally discloses to another the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding which is required by law to be kept secret, except in the proper discharge of his official duties or upon written order of the court. Nothing contained herein shall prohibit a witness from disclosing his own testimony."

After considerable procedural activity, which is not germane to the legal issues presented on appeal, a Special Prosecutor was appointed and a Special Grand Jury impaneled to investigate possible criminal conduct regarding the disclosure of the contents of the sealed report, and Beach was served with a subpoena requiring him to testify before the Grand Jury. He moved to quash the subpoena on

the grounds that the Federal and State Constitutions and the State Shield Law (Civil Rights Law, § 79-h) accorded him an absolute privilege not to testify and not to reveal the identity of his informant. The County Court agreed and quashed the subpoena (118 Misc 2d 195). We reverse.

Constitutional arguments virtually identical to those advanced by petitioner were found unavailing in *Branzburg v Hayes* (408 US 665), where it was held that the First Amendment does not protect news reporters from making their news sources known to a Grand Jury (see, also, *New York Times Co. v Jascalevich*, 439 US 1317). A majority of the Supreme Court observed that a reporter, as any other subpoenaed citizen, has the duty to appear before and to furnish the Grand Jury with information relevant to its investigation into an activity perceived by it to be potentially criminal in nature (*Branzburg v Hayes, supra,* p 697). If the likelihood exists that the reporter can supply information to aid in determining "whether illegal conduct had occurred", then the reporter is obliged to disclose the identity of his source (*supra,* at p 701; see *Rosato v Superior Ct. of Fresno County,* 51 Cal App 3d 190, 213, cert den 427 US 912; *Lightman v State,* 15 Md App 713, affd 266 Md 550, cert den 411 US 951).

Petitioner maintains that the test enunciated in *Branzburg* is not so straightforward. He interprets Justice Pow- ELL's concurring opinion (*Branzburg v Hayes,* 408 US 665, 709, *supra*) as adopting a test akin to that preferred by Justice STEWART in his dissent, namely, that the prosecution must demonstrate that the intelligence to be gathered from the reporter is absolutely necessary to the investigation, that there is a compelling and overriding governmental interest in obtaining the testimony, and that the information sought cannot be obtained by other means less destructive of First Amendment rights (*supra,* at p 743). We disagree, for we read Justice POWELL's concurrence not as sanctioning this type of balancing test, but as criticizing it for unfairly subordinating "the essential societal interest in the detection and prosecution of crime" (*supra,* at p 710, n; see *Matter of Farber,* 78 NJ 259, cert den *sub nom. New York Times Co. v New Jersey,* 439 US 997).

On the facts before us, we are unable to find any refuge for petitioner Beach in the Constitution. Here, the very act of disclosure itself could well have been a felony, provided that the source was a person covered by the statute. Furthermore, the probability that the originator was indeed such a person is heightened by the immediacy of the revelation, suggesting ready access to the Grand Jury's proceedings. While it is true, as petitioner contends, that the source may have been someone not subject to criminal liability, there is no requirement that the prosecutor first establish that a crime has been carried out before Grand Jury testimony can be exacted. Such logic overlooks the fact that the Grand Jury is an investigating body whose *raison d'etre* is to determine *whether* a crime has been committed. Calling witnesses to ascertain if illegality has been practiced is part and parcel of its important function (*Branzburg v Hayes,* 408 US 665, 701, *supra*) and is a reason why it is a formidable instrument of justice. Certainly, the disclosure of a sealed Grand Jury report, an act strongly suggestive of a felony, justifies having the person who made that revelation to the public at large testify concerning the source of his information. *Branzburg v Hayes* (*supra*) does not demand that the reporter have witnessed or have been an accomplice to a crime before his testimony can be coerced; only the possibility of a crime need be shown (*supra,* at p 748). The ineradicable realty is that Beach's information had more than a remote or tenuous relationship with the investigation; it may have been dispositive of whether a crime had been perpetrated or at the very least may have yielded evidence leading to who may have disclosed the report's contents. Finally, we find it noteworthy that there is no allegation of bad faith or harassment on the part of this Grand Jury. Clearly then, the subpoena comports with Federal constitutional guarantees.

Another of petitioner's claims is that he should be cloaked with a State constitutional privilege against testifying. However, no authority for extending the constitutional protection afforded reporters beyond the boundaries of the Federal Constitution has been offered and we are

unpersuaded that this case warrants taking such a dramatic step.

Petitioner's final contention is that the Shield Law privilege (Civil Rights Law, § 79-h) absolutely exempts him from naming his source. That this argument has considerable force is evident from merely reading the applicable statutory language: "nor shall a grand jury seek to have a journalist or newscaster held in contempt by any court, legislature or other body having contempt powers for refusing or failing to disclose any news or the source of any such news coming into his possession * * * notwithstanding that the material or identity of a source of such material * * * is or is not highly relevant to a particular inquiry of government" (Civil Rights Law, § 79-h, subd [b]). This privilege appears to be in conflict with section 6 of article I of the New York Constitution, which provides in pertinent part: "The power of grand juries to inquire into the wilful misconduct in office of public officers, and to find indictments or to direct the filing of informations in connection with such inquiries, shall never be suspended or impaired by law." For this reason, the prosecutor asks that the entire Shield Law be declared unconstitutional. We choose, however, to adhere to those general and judicious rules of construction which direct that a statute be construed so as to uphold its constitutionality (*Matter of Seitz v Drogheo,* 21 NY2d 181, 186; *People ex rel. McNeill v Morrow,* 32 AD2d 375, 379) and presume that the Legislature has acted constitutionally in enacting a statute (*People v Epton,* 19 NY2d 496, 505).

The absence of relevant legislative history on the Shield Law makes it necessary to examine this measure on its face. A comparison of the statute with the constitutional provision indicates that the former would be unconstitutional only when it is invoked to "impair" the investigative power of a Grand Jury examining public officer misconduct. "Impair" is commonly defined as "to make worse by or as if by diminishing in some *material* respect" (Webster's New Collegiate Dictionary [8th ed], p 569; emphasis added). Accordingly, the Shield Law privilege cannot be honored if invoking it significantly lessens the Grand Jury's investigative power. Petitioner's reliance on the

Shield Law effects just such an "impairment". The Special Grand Jury is investigating conceivable willful misconduct of a public officer or employee in the disclosing of a secret Grand Jury report; a wrongdoing which may constitute a felony. To the Grand Jury, Beach was the obvious person to subpoena for he had released contents of the report to the general public. It was he who controlled knowledge which would enable the Grand Jury to determine if, in fact, there had been official misbehavior. That body's investigative powers would be seriously impeded if we were to direct it to subpoena others with apparently far less knowledge about the disclosures while disallowing it to first hear Beach's testimony. It seems to us inarguable that the Shield Law was never intended to serve as a shield for, or to conceal the commission of, a crime. Moreover, Sheriff Eaton's statutory right to have the report remain sealed while he prepares a response cannot be ignored. Therefore, in these limited circumstances, where a Grand Jury is inquiring into possible official misconduct relating to unlawful Grand Jury disclosure of a sealed report, and the identity of the newsperson's source is a significant if not critical factor in the investigation, we conclude that the Shield Law does not apply.

Petitioner reasons that the history underlying the provision of section ( of article I, relating to the nonimpairment of the Grand Jury's right to inquire into the willful misconduct of public officers, is such that there is no hostility between it and the Shield Law. This particular paragraph was added in 1938 in reaction to events in Pennsylvania where the Legislature, in conjunction with the Governor, suspended the Grand Jury's power to investigate public officials (see *Matter of Wood v Hughes*, 9 NY2d 144, 150). It is petitioner's contention that inasmuch as the Shield Law does not withdraw the power of Grand Juries to investigate official corruption, it does not impact upon New York's Constitution. We share a different view. In offering the amendment, its proponent, the Honorable PHILIP HALPERN, stated: "The function of grand juries in the investigation of the misconduct of public officials is one of the most important functions served by the grand jury system today. The existence of an independent agency drawn from the

citizenry at large for that purpose is one of the most estimable features of the American system of government. It has served well. Recent experience has demonstrated that although it has been with us for over a century and a half * * * it is not beyond the reach of legislative interference. And the purpose of this amendment is to protect, at least, that function of the grand jury against legislative interference" (3 Revised Record of New York State Constitutional Convention of 1938, p 2571). To the extent that the Shield Law may enervate the investigative role of the Grand Jury, it is the very sort of "legislative interference" which the constitutional amendment was aimed at preventing.

Nor are we sympathetic to the suggestion that because certain evidentiary privileges and constitutional rights deferred to in Grand Jury proceedings, in a sense, reduce the Grand Jury's capacity to make an otherwise untrammeled search for the truth, application of the Shield Law to the Grand Jury at all times would not interfere with section 6 of article I of the State Constitution. The privileges and rights recognized are either traditional safeguards long established in the common law (see, e.g., *Matter of Priest v Hennessy,* 51 NY2d 62 [attorney-client privilege]) or are themselves of constitutional dimension (see, e.g., *Matter of New York State Dept. of Taxation & Fin. v New York State Dept. of Law, Statewide Organized Crime Task Force,* 44 NY2d 575 [taxing power, right to privacy]). In contrast, as we have noted, a reporter has no absolute constitutional privilege against disclosing his source and any statutory or common-law privilege he does enjoy is of comparatively recent vintage.

The order should be reversed, on the law, and the motion denied, without costs.

SWEENEY, J. P., KANE, CASEY and WEISS, JJ., concur.

Order reversed, on the law, and motion denied, without costs.