426 So.2d 1234 (1983)
GADSDEN COUNTY TIMES, INC., Timothy O. Matthew, Collins Conner and Creston Nelson-Morrill, Petitioners,
v.
Mallory E. HORNE, Respondent.
No. AD-280.
District Court of Appeal of Florida, First District.
February 10, 1983.
*1235 Jerome M. Novey and William Snow Frates of Frates, Jacobs, Farrar, Novey & Blanton, and Sidney L. Matthew of Gorman & Matthew, Tallahassee, for petitioners.
Mallory E. Horne of Horne, Rhodes, Jaffry, Horne & Carrouth, Tallahassee, pro se.
ERVIN, Judge.
Petitioners, the Gadsden County Times, Inc. [hereinafter: Times], Timothy O. Matthew, Collins Conner and Creston Nelson-Morrill, ask this court to review by certiorari a pre-trial discovery order compelling Conner to disclose the identity of confidential sources who provided her with information which was the basis for an allegedly defamatory article published by the Times. For the reasons following, we grant the petition and quash the lower court's order.
This litigation stems from an article published by the Times on June 21, 1979 which stated, in part:
Federal investigations, described as "colossal", have extended into the multistate business dealings of Quincian Phillip Fleming, former Florida Senate President Mallory Horne and Tallahassean Thomas Patrick McGlon, who was arrested last week for importing, selling and distributing cocaine, The Times learned this week.
The queries into corporate transactions involving the three men are believed to have sprung from last year's massive probe of mail fraud, conspiracy, stolen vehicles and loan fraud which was launched simultaneously in Illinois, New York, Georgia and Alabama, according to Times sources.
The respondent, Mallory Horne [hereinafter: Horne], subsequently filed a civil action for defamation against the petitioners on the basis of the June 21 article. That litigation has been marked by extensive pre-trial discovery and numerous motions filed by both sides.[1] In this instance we are asked to review a discovery order entered April 21, 1981, compelling Conner to identify the confidential sources who provided her with information relating to the existence of the "colossal" investigation referred to in the article. When Conner refused to disclose those sources during the taking of her deposition, Horne moved for an order compelling such testimony. The trial court, in granting the motion over objections, concluded that
... [a]n essential element to Plaintiff's cause is that he establish malice. Knowing the names of sources and what was related to defendants and how Defendant reporter reported this information has a direct bearing on whether or not malice was present. It is then very relevant and material to the issues in this cause.
It is not incumbent on Plaintiff to be required to pursue other avenues in attempting to determine the names of the sources used by defendants in formulating *1236 the news article in question. The right of Plaintiff to full and complete discovery from defendants in the pursuit of his claim is paramount to the immunity claimed by defendants in refusing to name their sources. See Caldero v. Tribune Publishing Company, et al., 562 P.2d 791; Branzburg v. Hayes, Judge, etc., et al., 408 U.S. 665 [92 S.Ct. 2646], 33 L.Ed.2d 626; Garland v. Torre, 259 F.2d 545 (cert. den., U.S.S.Ct. at 358 U.S. 910 [79 S.Ct. 237, 3 L.Ed.2d 231]); Herbert v. Lando, 441 U.S. 153 [99 S.Ct. 1635], 60 L.Ed.2d 115 (1979).
Because we find that the lower court's conclusions and its reliance on the above cited cases are contrary to Florida law on this issue, we consider certiorari to be an appropriate remedy. As we previously observed in Gadsden County Times Inc. v. Horne, 382 So.2d 347 (Fla. 1st DCA 1980),
[a]ppellate review of interlocutory orders by certiorari is a remedy available in a restricted category of cases. Certiorari will be granted only in cases in which it clearly appears that there is no full, adequate and complete remedy available to the petitioner by appeal after final judgment, as where (a) the trial court has acted without or in excess of its jurisdiction, or (b) its order does not conform to the essential requirements of law and may cause material injury throughout subsequent proceedings for which the remedy by appeal will be inadequate.
Id. at 348 (citations omitted). It has also been stated that certiorari is the "appropriate vehicle for testing the correctness of an order governing discovery procedures." Malt v. Simmons, 405 So.2d 1018, 1018-1019 (Fla. 4th DCA 1981). Accord, Manatee County v. Estech General Chemicals Corp., 402 So.2d 75 (Fla. 2d DCA 1981); Affiliated of Florida, Inc. v. U-Need Sundries, Inc., 397 So.2d 764 (Fla. 2d DCA 1981); Everglades Protective Syndicate, Inc. v. Makinney, 391 So.2d 262 (Fla. 4th DCA 1980). This is because
[i]f plaintiff is wrongfully required to answer defendant's interrogatories, she is beyond relief. We conceive no means by which on appeal this court could extract such knowledge, once gained, from the mind of the defendant, for truly "the moving finger having writ moves on nor any appeal shall lure it back to cancel half a line."
Boucher v. Pure Oil Co., 101 So.2d 408, 410 (Fla. 1st DCA 1957). Review by certiorari is "most appropriate when used to review orders allegedly improperly compelling discovery." Powell v. Wingard, 402 So.2d 532, 534 (Fla. 5th DCA 1981) (e.s.). See also, Haddad, The Common Law Writ of Certiorari in Florida, 29 U.Fla.L.Rev. 207 (1977). In this case petitioners contend that the lower court's order fails to conform to the essential requirements of law and will cause material injury for which no appellate remedy will be adequate. They argue that use of confidential sources is central to the news gathering and reporting process and that forced disclosure of such sources will substantially impair the effectiveness of reporters in the future. Once the identity of a confidential source is disclosed, they contend, the damage is done and cannot be later reversed by final appellate review. We agree and find, in this situation, that petitioners have reached "the level of material injury required for certiorari intervention." Gadsden County Times, 382 So.2d at 348.
The issue then becomes whether the trial court's order fails to conform to the essential requirements of law. In resolving this important issue we find it instructive to trace the evolution of the law relating to what the Florida Supreme Court has described as "the relationship between journalists and persons who give them information for publication hoping to remain anonymous." Morgan v. State, 337 So.2d 951, 952 (Fla. 1976). The first case to address that issue in the context of civil litigation was Garland v. Torre, 259 F.2d 545 (2d Cir.1958). In Garland, relied on by the lower court in the case sub judice in compelling disclosure, the famed actress Judy Garland brought a defamation action against CBS and a reporter, Marie Torre, based on allegedly defamatory statements made by CBS executives to Torre and subsequently *1237 published by Torre in her newspaper column. In attempting to discover which CBS executive had provided Torre with the information, Garland's attorneys deposed three top CBS executives, all of whom denied any knowledge of the incident. Finally Garland's attorney deposed Torre who, like Conner in this case, refused to disclose her source. In reviewing the lower court's order compelling the disclosure of Torre's source, the Second Circuit rejected the argument that a First Amendment privilege existed which would insulate reporters from forced disclosure of confidential sources, finding that, under the facts before it, if such an interest existed, it must "give place under the Constitution to the paramount public interest in the fair administration of justice." Id. at 549. Decisive in Garland were the facts that Garland had made "reasonable efforts" through deposition of CBS executives to discover the identity of the source, but to no avail; that the claim itself was not "patently frivolous," and that the information sought "was of obvious materiality and relevance." Id. at 551.
Nearly fifteen years later the United States Supreme Court addressed the narrow issue of whether the obligation of reporters to respond to grand jury subpoenas, is the same as that of other citizens, in a trilogy of cases known collectively as Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972),[2] involving the refusal of reporters to disclose the identities of confidential sources to grand juries investigating "traffic[ing] in illegal drugs, ... assassination attempts on the President, and ... violent disorders endangering both persons and property." 408 U.S. at 701, 92 S.Ct. at 2666, 33 L.Ed.2d at 651. The Branzburg majority[3] recognized that the newsgathering process qualifies for First Amendment protection: "[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated." 408 U.S. at 681, 92 S.Ct. at 2656, 33 L.Ed.2d at 639. In his concurring opinion, Justice Powell cautioned that the issue of the disclosure of confidential sources must be decided on a case-by-case basis by "striking ... a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct." 408 U.S. at 710, 92 S.Ct. at 2671, 33 L.Ed.2d at 656.
Subsequent to Branzburg, the trend among those courts that have addressed the issue of confidential sources is to recognize that a limited or qualified privilege does exist to protect the identity of such sources from forced disclosure absent a showing of compelling interest outweighing that privilege. This trend has been particularly apparent in cases in which a reporter, who is not a party to a civil action, is subpoenaed and deposed regarding confidential sources.
In its finding that Branzburg had acknowledged the existence of a limited or conditional privilege, the Ninth Circuit commented as follows:
A change has been in the making in more recent times. Several states have enacted legislation aimed at carving out a privilege against disclosure of news sources. *1238 The Congress of the United States has flirted with such legislation. More in point, the Supreme Court of the United States has considered the question and appears to have fashioned at least a partial First Amendment shield available to newsmen who are subjected to various demands to divulge the source of confidentially secured information.
Farr v. Pitchess, 522 F.2d 464, 467 (9th Cir.1975). That trend became evident the same year that Branzburg was handed down when the Second Circuit had occasion to revisit the issue of disclosure of confidential sources, first addressed in Garland, in the case of Baker v. F. & F. Investment, 470 F.2d 778 (2d Cir.1972). In affirming the lower court's refusal to compel disclosure in a situation revealing that the reporter was a non-party, the court, although not expressly retreating from Garland, distinguished that situation, wherein the plaintiff had taken "active steps" to discover the identity of the confidential source, from the facts in Baker which were not as compelling. The Baker court also noted that its "ruling in Garland [was] a carefully circumscribed one" which must be "strictly limited to the facts of the case." Id. at 784.
The Tenth Circuit, when confronted with the same issue in Silkwood v. Kerr-McGee Corp., 563 F.2d 433 (10th Cir.1977), recognized the existence of a qualified privilege which protects confidential sources from disclosure especially in civil cases. Id. at 436. "In determining the scope and extent of the privilege, the guiding light is the decision of the Supreme Court in Branzburg." Id. at 437.
In holding that a reporter must respond to a subpoena, the [Branzburg] Court is merely saying that he must appear and testify. He may, however, claim his privilege in relationship to particular questions which probe his sources.
Id.
The same result was reached in Riley v. City of Chester, 612 F.2d 708 (3d Cir.1979), involving a suit for injunction in which the reporter had not been named a party and had no interest in whatsoever. The Third Circuit interpreted Branzburg as being limited to grand jury testimony in criminal matters, stating:
The strong public policy which supports the unfettered communication to the public of information, comment and opinion and the Constitutional dimension of that policy, expressly recognized in Branzburg v. Hayes, lead us to conclude that journalists have a federal common law privilege, albeit qualified, to refuse to divulge their sources.

Id. at 715 (e.s.).
Finally, our own Supreme Court has interpreted Branzburg in accord with Riley and has recognized that a qualified privilege exists in Florida to protect confidential sources from forced disclosure. In Morgan v. State, 337 So.2d 951 (Fla. 1976), the reporter published information from a grand jury presentment prior to its official release. The source for that information was, admittedly, a member of the grand jury whose identity the reporter refused to disclose even in the face of criminal contempt. In reversing the Second District's affirmance of the criminal contempt conviction and sentence, the Supreme Court receded from its prior position[4] that no "privilege of confidential communication" existed to prevent compelled disclosure of confidential sources. Id. at 953. The Florida court recognized that "[t]he United States Supreme Court has now sanctioned the view that the First Amendment affords `some protection for seeking out the news.'" 337 So.2d at 953 (citing Branzburg, 408 U.S. at 681, 92 *1239 S.Ct. at 2656, 33 L.Ed.2d at 639). Finding that a newsgathering privilege which would protect against the disclosure of confidential sources exists in Florida,[5] the Court stated that
no such privilege can amount to an absolute right to an unimpeded flow of information in all places and at all times. Application of the privilege in a given case involves "the striking of a proper balance."
337 So.2d at 954. See also Loadholtz v. Fields, 389 F. Supp. 1299 (M.D.Fla. 1975) (plaintiff failed to show a compelling interest in seeking disclosure of non-party reporter's source); Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co., Inc., 455 F. Supp. 1197 (N.D.Ill. 1978) (subpoena requiring non-party reporter to disclose sources quashed). But see Winegard v. Oxberger, 258 N.W.2d 847 (Iowa 1977) (qualified reporter's privilege recognized but, when criteria set out in Garland were applied, non-party reporter should have been compelled to disclose source).
We find those cases involving reporters who are non-party witnesses to be persuasive in the case on review, but even more compelling are the post-Branzburg cases in which the subpoenaed reporter, from whom disclosure is sought, is a party to the litigation. In a case following closely on the heels of Branzburg, the Eighth Circuit addressed that issue in Cervantes v. Time, Inc., 464 F.2d 986 (8th Cir.1972), in which a Time magazine article, based in part on information gleaned from confidential sources within the FBI and the Justice Department, purported to link a local mayor with members of organized crime. As in this case, the defendant reporter refused to disclose the identities of his sources. The Eighth Circuit, specifically stating that it was receding from prior cases which had found no qualified privilege to protect the reporter from the disclosure of confidential sources, concluded that
to routinely grant motions seeking compulsory disclosure of anonymous news sources without first inquiring into the substance of a libel allegation would utterly emasculate the fundamental principles that underlay the line of cases articulating the constitutional restrictions to be engrafted upon the enforcement of State libel laws.
Id. at 993.
The same conclusion was reached by the First Circuit in Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583 (1st Cir.1980), in which a defendant reporter refused, on deposition, to reveal his confidential sources and was ordered to do so by the trial court. In reversing the order compelling disclosure, the Circuit Court discussed the competing interests in such a situation:
Whether or not the process of taking First Amendment concerns into consideration can be said to represent recognition by the Court of a "conditional", or "limited" *1240 privilege is, we think, largely a question of semantics. The important point for purposes of the present appeal is that courts faced with enforcing requests for the discovery of materials used in the preparation of journalistic reports should be aware of the possibility that the unlimited or unthinking allowance of such requests will impinge upon First Amendment rights. In determining what, if any, limits should accordingly be placed upon the granting of such requests, courts must balance the potential harm to the free flow of information that might result against the asserted need for the requested information.
Id. at 595-596.
Finally, and we think most compelling, is the recent Fifth Circuit decision in Miller v. Transamerican Press, Inc., 621 F.2d 721 (5th Cir.1980), in which a private plaintiff in a defamation action sought to compel disclosure of the media defendant's confidential source for an allegedly libelous magazine article which suggested that Miller, then Secretary-Treasurer of the International Brotherhood of Teamsters, had swindled the union pension fund out of more than one million dollars. Id. at 723. Acknowledging the necessity of looking to the facts in each case, it found that Miller had exhausted alternative means of discovering the source of the allegedly defamatory information; that the information sought was clearly relevant to his claim; and that he had a compelling need to learn the identity of the confidential source as it was the sole source[6] for the information in the article. On those facts the Miller court found that, although disclosure of the confidential source was required,
a reporter has a First Amendment privilege which protects the refusal to disclose the identity of confidential informants, however, the privilege is not absolute and in a libel case as is here presented, the privilege must yield.
Id. at 725.
We find that the weight of authority in the post-Branzburg cases supports the existence of a qualified privilege based on the First Amendment freedom of the press which protects against the compelled disclosure of the identity of confidential sources.[7] This privilege exists in civil cases where the subpoenaed reporter is not a party to the litigation, as well as in those cases in which he or his media employer are parties. The privilege, although based on constitutional interests, is not absolute  it *1241 must yield in those instances where the competing constitutional issues of the plaintiff in pursuing his claim and in seeking a fair administration of justice evidence a compelling need for such disclosure. In those instances in which constitutionally based competing interests vie for position "[t]he balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions." Branzburg, 408 U.S. at 710, 92 S.Ct. at 2671, 33 L.Ed.2d at 656 (Powell, J., concurring).
Although Branzburg mandated that a balancing approach be taken in determining when disclosure of confidential sources may be compelled, no specific criteria were suggested to aid courts in that task. The Florida Supreme Court, in Morgan, likewise held only that a balancing was required. Several post-Branzburg cases have attempted to delineate criteria to be applied when so balancing the competing interests involved and have suggested various tests.[8] By far the most widely accepted test is that first set out in Garland in which the Second Circuit concluded that disclosure was required because the plaintiff had expended "reasonable efforts" in attempting to obtain the identity of the confidential source by alternative means before deposing the reporter; the plaintiff's claim was not "patently frivolous"; and the information sought was "of obvious materiality and relevance." 259 F.2d at 551. Subsequent cases, in applying the Garland approach, have refined those factors into a three-part test in an effort to determine whether the plaintiff's interests in disclosure will prevail over the media interests in confidentiality. See, Silkwood, 563 F.2d at 438; Riley, 612 F.2d at 716-717; Winegard, 258 N.W.2d at 852; Gulliver's Periodicals, Ltd., 455 F. Supp. at 1197. The Fifth Circuit recently adopted the Garland three-part test in Miller, finding that a court, when confronted with the question of disclosure, must address the following issues:
(1) is the information relevant, (2) can the information be obtained by alternative means, and (3) is there a compelling interest in the information?
621 F.2d at 726. Because we feel that application of the Garland three-part test as set out in Miller will enable trial courts to strike the "proper balance" between the interests of the press and the party seeking disclosure as required by Morgan, we adopt that test for application in Florida.[9]
*1242 In light of the foregoing, we conclude that the lower court's order fails to conform to the essential requirements of law in that it ignores Florida precedent and the weight of authority in other jurisdictions relating to the existence of a qualified privilege protecting reporters from forced disclosure of the identities of their confidential sources absent a compelling need on the part of the individual seeking disclosure. Furthermore, application of the Garland three-part test to the facts in this case requires that the order be quashed. The lower court found that knowledge of the identities of confidential sources was essential if Horne was to prove malice and that the information sought was therefore relevant. "Relevancy describes evidence that has a legitimate tendency to prove or disprove a given proposition that is material as shown by the pleadings." Zabner v. Howard Johnson's Incorporated of Florida, 227 So.2d 543, 545 (Fla. 4th DCA 1969). See also McCormick on Evidence § 185 (2d ed. 1972). Although we do not now determine Horne's burden of proof regarding "malice", which must necessarily turn on the trial court's determination of whether he is a public figure, it would seem that, under any definition of malice, the identity of the source of allegedly libelous information would be relevant in a libel action. The lower court was therefore correct in finding that relevancy, the first part of the Garland test, was shown.
The next question to be answered is whether the facts establish that the information sought could not have been obtained by alternative means. It is the Times' contention that Horne made no attempt to pursue other means of obtaining the identity of the confidential sources and that information which would verify the truth of the allegedly libelous statements was readily available from several local sources as well as from the FBI through federal Freedom of Information and Privacy Act procedures. Horne countered, and the lower court found, that it was not incumbent upon him to pursue other avenues in attempting to identify the Times' confidential sources. In light of the Garland test that finding was clearly erroneous.
Finally, the lower court failed to find that Horne has a "compelling" interest in obtaining the identities of the confidential sources and failed to set out any facts in its order which would support the existence of such an interest. A finding of compelling interest must be made after a court has determined that the first two parts of the Garland test have been satisfied. It contemplates a review of the facts in a given situation and the striking of a proper balance between the libel plaintiff's interest in obtaining information and the media defendant's qualified privilege to protect its confidential sources. Morgan, 337 So.2d at 954. No facts were set out in the lower court's order which would support the conclusion that Horne has a compelling interest in obtaining the information sought. Moreover, the fact that he has failed to attempt to obtain the information from alternative sources would negate any such finding at this time.
Because application of the Garland test does not mandate disclosure under the facts of this case, and because the disclosure of the identity of confidential sources would, once divulged, cause material injury for which appellate review would be inadequate, we grant the petition for writ of certiorari and quash the lower court's order compelling disclosure.
MILLS and LARRY G. SMITH, JJ., concur.
NOTES
[1] This is the second occasion that we have had to review this case which is still in the pre-trial stages. In Gadsden County Times, Inc. v. Horne, 382 So.2d 347 (Fla. 1st DCA 1980), we declined to grant a petition for writ of certiorari brought by the Times to review the lower court's denial of its motion for summary judgment in which the Times asked the court to find Horne to be a "public figure."
[2] The other cases consolidated and considered with Branzburg were In Re Pappas and United States v. Caldwell.
[3] A greatly divided Court handed down the Branzburg decision. Chief Justice Burger and Justices Blackmun and Rehnquist joined in Justice White's "majority" opinion. That opinion reached the status of a majority opinion only when Justice Powell concurred in the result, while in his separate concurring opinion, he emphasized the limited nature of the decision. Justice Douglas dissented and would have found that an absolute privilege exists which allows a reporter to refuse to testify before a grand jury regarding his sources. Finally, Justice Stewart, joined by Justices Brennan and Marshall, dissented, and, while not finding an absolute privilege to exist, would have required that a state, when it seeks to compel testimony from reporters before grand juries, show that: there is a substantial relationship between the information sought and a compelling state interest in obtaining such information; the information is clearly relevant to the subject of inquiry; that it is reasonable to believe that the witness has the information; and that there are no alternative means of obtaining the information which are less destructive of First Amendment liberties. 408 U.S. at 739-740, 92 S.Ct. at 2679, 33 L.Ed.2d at 674-675 (Stewart, J., dissenting).
[4] In the early case of Clein v. State, 52 So.2d 117 (Fla. 1950), a newspaper editor published a story, extensively quoting from testimony presented before a grand jury investigating charges of bribery of a public official. When subpoenaed by the grand jury, Clein refused to disclose the source of the information and was held in contempt. In that pre-Branzburg decision, the Florida court concluded that no privilege of confidential communications existed to prevent disclosure of the source of the testimony. The Morgan court expressly receded from that position in light of Branzburg.
[5] The lower court, relying on Garland, implied that no such privilege, qualified or otherwise, exists in Florida. Because the Florida Supreme Court had recognized such a privilege in Morgan, the lower court's reliance on Garland was misplaced. Even more misplaced was the court's reliance on Caldero v. Tribune Publishing Co., 562 P.2d 791 (Idaho 1977), where it was found that no privilege exists which will protect reporters from disclosure of the identity of their confidential sources. While expressly recognizing that other states, including Florida, had found at least a qualified privilege to exist, the Caldero court rejected that view in light of an Idaho statute which provided that "all persons, without exception" must testify when subpoenaed in that state. The precedential value of Caldero was somewhat eroded by the more recent decision of the Idaho Supreme Court in Sierra Life Ins. Co. v. Magic Valley Newspapers, Inc., 623 P.2d 103 (Idaho, 1981). In Sierra the court found that the lower court had erroneously stricken the media defendants' pleadings when the defendants refused to comply with an order compelling disclosure of confidential sources. In attempting to distinguish Caldero, the court noted that the plaintiff in Sierra had not "pointed out how revelation of sources would have been instrumental in establishing that the articles were in fact false." In Caldero, on the other hand, "[r]elevance was there established beyond quibble." Id. at 108-109. We decline to adopt the position taken by the Idaho Supreme Court which is clearly contrary to the position of our own Supreme Court in Morgan, and to the weight of authority on this issue.
[6] In Carey v. Hume, 492 F.2d 631 (D.C. Cir.1974), disclosure was also found to be required where the confidential source in question was the sole source of the allegedly defamatory information and where the plaintiff was required to meet the more difficult N.Y. Times standard of actual malice. Nevertheless, the Carey court found that the reporter's First Amendment interests require a balancing of the competing interests involved along the lines set out in Garland.
[7] Horne urges this court to follow the lead of the lower court and to rely on the United States Supreme Court decision in Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), in resolving the issues in this case. Because we feel that such reliance is erroneous, we decline to do so. In Herbert, the public figure libel plaintiff sought access to the mental impressions and editorial processes employed by the defendant reporters and editors. Such facts are inapposite to this case. While the plaintiff in Herbert sought to discover evidence of the "state of mind" of the media defendants at the time they were preparing the allegedly defamatory 60-Minute segment, the respondent in this case admittedly wants only to know "who implicated [him] in all of that garbage?" While the respondent is clearly entitled to seek, through discovery, evidence of defendants' states of mind in preparing the article in question, see Cape Publications, Inc. v. Bridges, 387 So.2d 436 (Fla. 5th DCA 1980), Herbert does not mandate disclosure of confidential sources. Our position is supported by the Fifth Circuit's Miller decision wherein it was concluded that

[t]he policies supporting a First Amendment privilege would appear to be stronger here, where a defamation plaintiff seeks to compel disclosure of the name of a confidential informant, than they were in either Branzburg or Herbert.
621 F.2d at 725. See also Greenleigh Associates, Inc. v. The New York Post Corporation, 79 A.D.2d 588, 434 N.Y.S. 388, 6 Med.L.Rptr. 2423 (App.Div. 1980), where it was held that although, under the facts of the case, disclosure of confidential sources was not justified, the plaintiff was free to proceed with discovery of the editorial processes employed by the libel defendant.
[8] For example, the Eighth Circuit concluded that disclosure was justified if, in the course of pre-trial discovery, "substantial evidence" appears which shows that the allegedly libelous statements were so "inherently improbable" that there was strong doubt as to their truth. Cervantes, 464 F.2d at 994. The First Circuit, on the other hand, has suggested that the answer lies in the application of Federal Rule 26 and its provisions for discovery and protective orders combined with a "heightened sensitivity to any First Amendment implication that might result from the compelled disclosure of sources." Bruno & Stillman, Inc., 633 F.2d at 596.
[9] Petitioners suggest that the appropriate standard to be applied is that set out in State v. Peterson, ___ Fla. Supp. ___, 7 Med.L.Rptr. 1090 (Fla. 6th Cir.Ct. 1981), where it was held that the proponent of testimony relating to confidential sources must demonstrate:

(a) The reporter has information relevant and material to the offense charged or to the defense of the person charged;
(b) The reporter has relevant and material information which is not available from sources not protected by the First, Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 4 and 12 of the Florida Constitution;
(c) The party seeking information has unsuccessfully attempted to obtain the evidence sought from other sources less chilling of First Amendment freedoms, and has exhausted all efforts in this regard;
(d) The evidence sought is so important that nonproduction thereof would result in a violation of the defendant's constitutional rights.
7 Med.L.Rptr. at 1091. A review of Florida Circuit Court cases indicates that this standard has been used almost exclusively in criminal cases in which a non-party reporter is thought to have information relating to a criminal charge or defense. See, State v. Laughlin, 43 Fla. Supp. 166 (Fla. 16th Cir.Ct. 1974); State v. Stoney, 42 Fla. Supp. 194 (Fla. 11th Cir.Ct. 1974); State v. Carr, 46 Fla. Supp. 193 (Fla. 11th Cir.Ct. 1977); State v. Miller, 45 Fla. Supp. 137 (Fla. 17th Cir.Ct. 1976); State v. Petrantoni, 48 Fla. Supp. 49 (Fla. 6th Cir.Ct. 1978); State v. Silber, 49 Fla. Supp. 71 (Fla. 11th Cir.Ct. 1979); State v. Beattie, 48 Fla. Supp. 139 (Fla. 11th Cir.Ct. 1979); State v. Morel, 50 Fla. Supp. 1 (Fla. 17th Cir.Ct. 1979). That test, which appears to be derived from Justice Stewart's dissenting opinion in Branzburg, was also recently applied by the Southern District of Florida in United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982), a federal criminal case. We decline to extend that standard to the present situation in which the plaintiff seeks to discover the identity of confidential sources in a civil libel action, and the reporter, seeking to prevent disclosure, is a defendant in that action.