GREEN, J.
By way of a petition for writ of certio-rari, Carla Cabanas seeks review of a discovery order overruling her objections to certain deposition questions posed to her attorney on the grounds of the attorney/client privilege and overruling her objections to the production of copies of her income tax returns for the years 1993,1994 and 1995. We find that this order departs from the essential requirements of the law. We therefore grant the petition and quash the order under review.[1]
Cabanas purchased a home in November of 1995. Leonardo Brito, a real estate attorney, represented her in this transaction up to and including the closing. At the time of her purchase of this home, Cabanas had been in a romantic relationship and lived with Omar Armenteros, the president of respondent Ford, Armenteros, Manucy, Inc. (“F.A. & M.”). On or about November 9, 1995, Ar-menteros executed a check for $16,875 on the respondent company’s letterhead and gave it to Cabanas. After the closing on the home, Cabanas’ relationship, with Armenteros deteriorated. Armenteros demanded the return of the $16,875 from Cabanas as well as payment for the value of materials and services to the house allegedly provided to and paid for by F.A. & M. When Cabanas refused payment, F.A, & M. filed this three count suit for money lent, money paid and quantum meruit agáinst Cabanas. The suit essentially alleges that Cabanas purchased the home with funds loaned to her by F.A. & M. and that F.A. & M. had paid expenses for the home including, but not limited to, fees for utility services, security fees, and lawn maintenance fees, with the expectation that Cabanas would repay F.A. & M for these expenses. Cabanas’ position in this litigation is apparently that all of the funds given to her were gifts and not loans.
During the discovery phase of this litigation, F.A, & M. deposed attorney Brito. F.A. & M. sought, over objection, to elicit information from the attorney regarding his communications with Cabanas which we believe may infringe upon the attorney/client privilege, if no third parties were present.[2] The attorney/client privilege has been said to arise if:
*1102 (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.
See Skorman v. Hovnanian of Fla., Inc., 382 So.2d 1376, 1377-78 (Fla. 4th DCA 1980) (citing N.L.R.B. v. Harvey, 349 F.2d 900, 904 (4th Cir.1965)); see also Hoyas v. State, 456 So.2d 1225, 1228 (Fla. 3d DCA 1984) (holding that the attorney/client privilege arises: “(1) [w]here legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.”) (citation omitted). In our opinion, to the extent that Cabanas’ communications with her counsel were made privately and outside the presence of others, the attorney/client privilege would clearly attach. In ordering the attorney to respond to the deposition questions about such communications over Cabanas’ objections under these circumstances, we find the lower court’s order to be a departure from the essential requirements of law.
Next, F.A. & M. has requested the production of Cabanas’ personal income tax returns for the years 1993 through 1995, inclusive. F.A & M’s proffered relevancy of these returns is that they go to the heart of whether Cabanas perpetrated a fraud upon the mortgagee/lending institution by using borrowed funds for the purchase of the home. The issue of whether Cabanas may have defrauded the mortgagee is wholly irrelevant to the issue of whether she is indebted to the respondent company based upon the stated causes of action in this case. Income tax returns, although not privileged, may be subject to production in discovery, but only if they are relevant. See Blanco, 553 So.2d at 286 (holding corporate president’s personal tax returns did not have to be produced because they were irrelevant in an action by corporation to recover profits allegedly misdirected by an employee); Gollsneider v. Stein, 214 So.2d 628, 629 (Fla. 2d DCA 1968) (finding that “copies of income tax returns are not privileged and therefore may be used in state court proceedings where they are relevant.”); Fryd Const. Corp. v. Freeman, 191 So.2d 487, 489 (Fla. 3d DCA 1966) (same). In the absence of any relevancy to the issues in this ease, we conclude that the order compelling Cabanas’ production of her personal income returns was similarly a departure from the essential requirements of the law.
For these reasons, we grant the petition and quash the order under review.

. We have jurisdiction to entertain this petition. See Frank Medina Trading Co. v. Blanco, 553 So.2d 285, 286 (Fla. 3d DCA 1989); Hartford Accident & Indem. Co. v. U.S.C.P. Co., 515 So.2d 998, 1000 (Fla. 4th DCA 1987); Baron, Melnick & Powell, P.A. v. Costa, 478 So.2d 492, 492 (Fla. 1st DCA 1985); Gadsden County Times, Inc. v. Horne, 426 So.2d 1234, 1236 (Fla. 1st DCA 1983); Affiliated of Florida, Inc. v. U-Need Sundries, Inc., 397 So.2d 764, 764 (Fla. 2d DCA 1981).

. Specifically, the deposition questions ordered to be answered were as follows:
Was there ever any discussion in your presence that Ford, Armenteros & Manucy were going to .take title to this property along with Miss Cabanas, was there ever any discussion in your presence regarding that possibility?
Was there ever any discussion in your presence whether Miss Cabanas was going to take title to this property along with Mr. Armenteros?
*1102 Do you know how much of a down payment was required to be given on the contract? Do you know what portion of those funds came from Miss Cabanas?
Do you know what portion of those funds were contributed by Mr. Armenteros?
May I see a copy of the closing statement?
From the total settlement proceeds, what portion of it were given by Mrs. Cabanas?
Was any portion of this [the down payment] requested by you of Mr. Armenteros?
Were there any problems in connection with the title on this particular property?
Were there delays in the closing of this transaction as a result of title problems?
Was there ever any problem with the financing that was going to be procured in this transaction as a result of the delay?
But for the payment from Ford, Armenteros & Manucy, would there have been sufficient funds to close this transaction?
Do you have any personal knowledge as to how — in other words, what Carla Cabanas intended to do with title after she acquired it in her name?
During any of these conversations, were you ever a witness to any comments by either Omar or Carla Cabanas that the house was intended to be put on the market for sale?